Thomas D. WINEBARGER, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 2, 1994.

Decided March 9, 1995.

T. Asher Morris, for appellant.

Timothy P. Wile, Asst. Counsel In–Charge Appellate Section, for appellee.

Before PELLEGRINI and FRIEDMAN, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Thomas D. Winebarger (Winebarger) appeals from an order of the Court of Common Pleas of Bradford County (trial court) denying his appeal and sustaining the one-year suspension of his operating privilege imposed by the Department of Transportation, Bureau of Driver Licensing (DOT) pursuant to Section 1547(b) of the Vehicle Code (Code), 75 Pa.C.S. § 1547(b).[1]  We affirm.

▪ On November 20, 1993, State Trooper Michael Allen Simpler (Trooper Simpler) was called to the scene of an accident where he encountered a pick-up truck lying on its roof in a ditch.  Winebarger admitted to being the operator of the truck and Trooper Simpler observed him staggering and swaying, detecting a strong odor of alcohol coming from his person.  At the hospital, Winebarger was arrested and requested to submit to chemical testing.  Winebarger agreed to submit to a blood test but stated that medical personnel would get only two chances to draw his blood.[2]  Winebarger indicated that his recessed or small veins had often made getting blood from him difficult in the past, and the first attempt by a nurse in fact proved unsuccessful.  Assistance was requested from a medical technologist who also attempted to draw blood from Winebarger.  Winebarger refused to allow the technician to make an attempt on the same arm, and offered his other arm instead.  This attempt was also unsuccessful and Winebarger resisted any further attempts to draw blood.  Trooper Simpler considered Winebarger's conduct a refusal and his license was suspended.

Winebarger appealed to the trial court, arguing that he possessed a medical justification requiring an alternate type of test and that his refusal was negated by the inability of the hospital personnel to draw blood.  The trial court disagreed, finding that the type of test is within the complete discretion of the arresting officer and that Winebarger's actions fell short of the unqualified, unequivocal assent required of a motorist requested to submit to chemical testing.  The trial court affirmed DOT's suspension, and Winebarger now appeals to this Court.[3]

1. Section 1547(b) of the Code provides for the suspension of a driver's license for a period of one year upon a refusal to submit to chemical testing to determine blood alcohol content.

2. Trooper Simpler testified that a breath test was not available at his post and that urine testing is hardly ever used.

3. In reviewing a driver's license suspension case, our scope of review is limited to determining whether the trial court committed an error of law or an abuse of discretion and whether its

■ Winebarger argues that the trial court erred as a matter of law when applying the unequivocal and unconditional language taken from this Court's decision in *Colgan v. Department of Transportation, Bureau of Driver Licensing*, 127 Pa.Commonwealth Ct. 479, 561 A.2d 1341 (1989). *Colgan* involved a motorist who demanded that blood be extracted from his big toe rather than from his arm.[4] When the sample extracted from his toe proved to be inadequate, his actions were deemed a refusal and his license was suspended. This Court affirmed the suspension, reiterating established law that "anything less than unqualified, unequivocal assent to chemical testing constitutes a refusal." *Id.* at 481, 561 A.2d at 1342.

Complaining that the above case and the law on which it relies is inapplicable because there is a difference between quantifying the number of "radical intrusions" into his arm and qualifying where blood may be taken, Winebarger urges this Court to hold, as a matter of law, that consent to one "stick" into each arm should be sufficient, rendering any subsequent refusal meaningless for compliance purposes. This we decline to do. We will not quantify how many attempts at drawing blood will be deemed proper consent, preferring instead to continue to analyze the facts of each case independently.

Here, there are several facts in existence, as found by the trial court, which support its decision to affirm Winebarger's license suspension.[5] Firstly, Winebarger qualified his acceptance, even before testing, on just two attempts by medical personnel. (N.T. 6, 11). Conceivably, this conditional acceptance alone is justification for Winebarger's suspension. In *Department of Transportation,*

*Bureau of Driver Licensing v. Miller*, 155 Pa.Commonwealth Ct. 564, 625 A.2d 755 (1993), also relied upon by the trial court, we affirmed the suspension of a motorist who conditioned his acceptance upon the hospital assuming liability should he contract hepatitis or Acquired Immune Deficiency Syndrome.

Next, after the first attempt failed, and when the more highly trained medical technologist was asked to attempt to draw blood, Winebarger refused to produce his "most promising arm," the one previously and unsuccessfully chosen by the nurse. (N.T. 13, 24–25). Once again, Winebarger has placed impediments and preconditions upon his consent to chemical testing, potentially limiting the chances of a successful test.

DOT acknowledges that the restrictions insisted upon by Winebarger were not as restrictive as those imposed by the motorists in *Colgan* or *Miller*. Although not willing to state how many "needle sticks" a motorist must endure before complying with the requirements of Section 1547, DOT urges us to hold that it is more than two.

The law is clear that a "refusal" is "defined" as "anything substantially less than unqualified, unequivocal assent" to chemical testing. *Groscost*, 142 Pa.Commonwealth Ct. at 39, n. 1, 596 A.2d at 1218–19, n. 1 (citing *Department of Transportation v. Mumma*, 79 Pa.Commonwealth Ct. 108, 468 A.2d 891 (1983)). Section 1547 states in part as follows:

> (a) General rule.—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have

---

findings of fact are supported by substantial evidence. *Commonwealth v. Danforth*, 530 Pa. 327, 608 A.2d 1044 (1992). In addition to our limited scope of review, we are required to view the evidence in light most favorable to the party that prevailed before the trial court. *Department of Transportation, Bureau of Driver Licensing v. Malizio*, 152 Pa.Commonwealth Ct. 57, 618 A.2d 1091 (1992).

**4.** Initially, *Colgan* refused a breath test and requested the blood test.

**5.** We note that while the question of whether a motorist has refused a chemical test is one of law, reviewable by this Court, our decision must

be based upon the facts as found by the trial court, the ultimate factfinder in these proceedings. *Department of Transportation, Bureau of Driver Licensing v. Groscost*, 142 Pa.Commonwealth Ct. 36, 596 A.2d 1217 (1991).

given consent to *one or more* chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance. . . . (Emphasis added.)

Section 1547 permits more than one attempt at testing, including more than one attempt using the same type of test. Indeed, a failure to complete a second breathalyzer attempt, even after the first one proved successful, will be deemed a refusal. *Department of Transportation, Bureau of Driver Licensing v. Kilrain,* 140 Pa.Commonwealth Ct. 484, 593 A.2d 932, *petition for allowance of appeal denied,* 529 Pa. 625, 600 A.2d 541 (1991).

Here, it is undisputed that Winebarger refused to allow further attempts at drawing blood from his arms following the second unsuccessful attempt. Once DOT has shown that a motorist has refused to submit to chemical testing, as it has here, the burden shifts to the motorist to prove by competent medical evidence that he was physically unable to take the test. *Department of Transportation, Bureau of Driver Licensing v. Wilhelm,* 156 Pa.Commonwealth Ct. 24, 626 A.2d 660 (1993); *Larkin v. Norton,* 109 Pa.Commonwealth Ct. 611, 531 A.2d 844 (1987).

In this case, not only has Winebarger failed to submit any medical evidence that he was physically unable to take the test, he actually admitted that he had given blood samples in the past. (N.T. 34–35). Furthermore, the only medical testimony on record supports the trial court's finding that Winebarger was physically capable of successfully completing the test and providing a sample of his blood. Both the nurse and the medical technologist stated that it often takes more than one attempt, or even more than two attempts, before blood may be drawn from an individual. (N.T. 15, 23). The nurse also testified that if given enough attempts, she would have been able to draw blood from Winebarger.

We understand that there may be circumstances in which the anatomical structure or medical history of an individual will provide justification for his or her refusal or inability to comply with chemical testing. The motorist in *Department of Transportation, Bureau of Driver Licensing v. Fleming,* 119 Pa.Commonwealth Ct. 343, 547 A.2d 488 (1988), a case advanced by Winebarger in support of his argument, effectively proved his physical inability to consent to a blood test through a demonstration of new skin grafts on his arms. Contrary to this case, the trial court in *Fleming* accepted the motorist's fear of puncturing these grafts as competent evidence that he was physically unable to take the blood test.

■ Citing *Larkin v. Commonwealth,* 109 Pa.Commonwealth Ct. 611, 531 A.2d 844 (1987), Winebarger argues that where the inability of a motorist to complete the chemical test is obvious, competent medical evidence is not needed to challenge the suspension. We agree that this is a correct statement of the law and recognize that in *Fleming,* the motorist satisfied his burden merely by rolling up his sleeves in the trial court, exhibiting the new skin grafts covering his arm. However, we disagree with Winebarger's assertion that the inability of the medical personnel to draw blood automatically renders his condition obvious. As mentioned previously, medical testimony exists throughout the record indicating that many attempts are sometimes needed before a health care professional can successfully draw a blood sample.

■ Whether a motorist has satisfied his burden of proving an inability to take a chemical test is a factual determination to be made by the trial court. *Waigand v. Commonwealth,* 68 Pa.Commonwealth Ct. 541, 449 A.2d 862 (1982). Here, the trial court found there was insufficient evidence to demonstrate that Winebarger was physically unable to take the blood test. As an appellate Court, we are bound by this finding.

Accordingly, the order of the trial court is affirmed.

## ORDER

NOW, March 9, 1995, the order of the Court of Common Pleas of Bradford County, in the above-captioned matter, is hereby affirmed.

FRIEDMAN, Judge, dissenting.

I respectfully dissent.

Here, the majority declines to hold, as a matter of law, that 2 "sticks" in an attempt to draw blood should be sufficient, rendering any subsequent refusal meaningless. However, absent evidence that it was the licensee's own interference with the extraction process that necessitated additional attempts, I would not hesitate to hold that a licensee who twice endures the blood drawing procedure without success, nevertheless satisfies his burden under section 1547(b) of the Vehicle Code, 75 Pa.C.S. § 1547(b). Because I believe that is what occurred here, I respectfully dissent.

The majority contends that Winebarger did, in fact, impede the test and, thereby, limited the possibility of its success. I would disagree. First, I would note that comparisons to *Colgan v. Department of Transportation, Bureau of Driver Licensing,* 127 Pa.Commonwealth Ct. 479, 561 A.2d 1341 (1989) or *Department of Transportation, Bureau of Driver Licensing v. Miller,* 155 Pa.Commonwealth Ct. 564, 625 A.2d 755 (1993) are inappropriate. In *Colgan,* the licensee first refused a breath test and when, in response to his request, a blood test was attempted, the licensee demanded that the sample be drawn from his big toe rather than his arm. In *Miller,* the licensee would not assent to the blood test at all unless the hospital first assumed liability for any diseases he could contract. Not only were Winebarger's "restrictions" less severe than the restrictions imposed by the motorists in *Col-*

*gan* and *Miller,* a point which both DOT and the majority concede, but in light of Winebarger's proven difficulty in giving blood, I do not believe that they should be viewed as impediments at all. Indeed, under the circumstances, I feel that Winebarger was most accommodating.

Unlike a breath test, a blood test is a radical intrusion which is certainly not painless. Here, Winebarger explained that because of a medical condition, he had experienced great difficulty giving blood in the past. Nevertheless, Winebarger did not object when hospital personnel made two attempts to obtain blood, both of which failed. That Winebarger's condition, in fact, existed was confirmed by the medical personnel through their observation and unsuccessful vena-punctures.

Moreover, even assuming, arguendo, that Winebarger refused to submit to chemical testing, I believe that he has met his burden of proving that this refusal was justified. However, without considering Winebarger's justification, the majority relies on the trial court's finding that Winebarger failed to offer any medical evidence to show that he was physically *incapable* of providing an adequate blood sample; this in spite of our previous holding that when a licensee's medical condition is obvious, no additional medical evidence is required. *Department of Transportation, Bureau of Driver Licensing v. Fleming,* 119 Pa.Commonwealth Ct. 343, 547 A.2d 488 (1988).

I do not dispute the finding that Winebarger was *capable* of successfully completing the test and providing a sample of his blood.[1] However, the inquiry should be whether Winebarger's difficulty in providing the requisite sample is a result of an obvious medical condition justifying a "refusal." Winebarger indicated that he had a condition that caused a difficulty in procuring blood samples,[2] and

1. Obviously, that conclusion is based on common knowledge that if blood is properly drawn by a trained medical technician, one's veins generally will bleed. Thus if given enough attempts and alternative sites, the hospital personnel *may* have obtained a sample. In coming to the conclusion here, however, the trial court and the majority ignore the specific facts of this case.

2. At the hearing, Winebarger testified that in one instance blood was drawn from his neck by a physician due to the doctor's inability to draw blood through Winebarger's arms. (N.T. at 33.) Moreover, the nurse testified that a blood sample

it was due to this difficulty that Winebarger resisted further attempts to draw blood after two unsuccessful vena-punctures. Here, the hospital personnel attested to Winebarger's "bad veins" [3] which made withdrawal of blood a difficult procedure.[4] *See McQuaide v. Department of Transportation, Bureau of Driver Licensing,* 166 Pa.Commonwealth Ct. 683, 647 A.2d 299 (1994); *Department of Transportation, Bureau of Traffic Safety v. Day,* 93 Pa.Commonwealth Ct. 49, 500 A.2d 214 (1985).

Although I agree that a police officer possesses unfettered discretion to choose the type of chemical testing to be given to a licensee, *Mooney v. Department of Transportation, Bureau of Driver Licensing,* —— Pa.Commonwealth Ct. ——, 654 A.2d 47 (1994), that discretion cannot be abused when a medical condition obviously precludes successful administration of the requested test. I am offended by a holding that demands an individual, who has an obvious medical condition and who willingly has submitted to two unsuccessful vena-punctures already, submit to as many attempts as it takes to procure a sufficient sample.[5] The hospital personnel and trooper knew of Winebarger's medical condition and, despite that condition, Winebarger did not object to the hospital personnel's two attempts to procure a blood sample.

---

3. could have been taken from other parts of Winebarger's body (N.T. at 21); however, the hospital personnel did not attempt to use those alternative sites despite Winebarger's "bad veins" and unpromising arms. (N.T. at 22.)

3. The trial court stated that "[t]he record of the July 5, 1994 hearing reveals that [Winebarger] never informed the hospital personnel of any medical condition which would make them encounter difficulty in obtaining blood." (Trial ct. op. at 4.) However, the record indicates that both the attending nurse and medical technologist were fully aware of Winebarger's condition. The nurse noted that she "examined both of his arms, neither one looked very promising...." (N.T. at 13.) The nurse also recalled that Winebarger told her that he has had problems in the past in giving blood. (N.T. at 13.) Moreover, the medical technologist informed Trooper Simpler that Winebarger had "bad veins" which was the reason the hospital personnel could not draw blood. (N.T. at 9.) The medical technologist also testified as follows:

A Initially, I put the tourniquet on, uh, since there was difficulty initially, I examined his arm very thoroughly, I examined from—antecubital, from approximately the elbow all the way down to the back of his hand, forearm, the back of his forearm, any place where I've experienced where there could be a vein available for withdrawal of blood. Uh, I took an extended amount of time to examine his arm because, well, it was very difficult, well, I couldn't find a—what I thought was a suitable location. After probably a couple minutes of examining his arm, I attempted what I thought was my best chance, y'know, had—made my best judgment as to where I might possibly get some blood from him.
. . . .
Q Could you have ever gotten blood from this arm with another attempt—do you think or

not, in your best opinion, based on your experience?
A It would have been very difficult, it would have been a combination of probably experience, judgment, and probably even a little bit of luck, y'know, I mean, you know where—what your anatomy is, and sometimes you just use your judgment if you can't physically find a location, yeah.
. . . .
Q And isn't it true that in that affidavit you said that you seriously doubt that blood could have been drawn without great difficulty because [Winebarger] was an individual with unusually deep and hard to locate veins?
A It would have been, he was definitely a difficult stick, I—y'know, there's no doubt about that.
(N.T. at 26, 27, 31.)

4. I recognize that even people without such a condition sometimes require more than one vena-puncture. Here, however, Winebarger's failure to bleed is coupled with a prior explanation of the problem and recognition of the problem by medical personnel. Under these circumstances, I believe that the trained medical personnel's inability to procure a sample after two attempts is sufficient, common sense proof that Winebarger had a condition that made it extremely difficult for him to give blood and, further, medical evidence of that condition as justification for Winebarger's refusal to submit to additional vena-punctures is unnecessary.

5. The majority notes that the nurse testified that if given "enough attempts," she would have been able to obtain a sample. However, nowhere is there any indication as to how many attempts would suffice. In fact, the nurse testified that if she had been given "an unlimited number of attempts," she would have *eventually* been able to draw blood. (N.T. at 15.)

After those attempts proved unsuccessful, the Commonwealth could have required a non-invasive alternate test. *See McQuaide.* It did not do so. Because blood testing is certainly not a painless procedure and is indeed invasive, I believe any other result is unreasonable and unjustifiable.[6]

---

**6.** The majority points out that, based on *Department of Transportation, Bureau of Driver Licensing v. Kilrain*, 140 Pa.Commonwealth Ct. 484, 593 A.2d 932, *appeal denied*, 529 Pa. 625, 600 A.2d 541 (1991), section 1547(a) of the Vehicle Code, 75 Pa.C.S. § 1547(a), permits more than one attempt at testing, including more than one attempt using the same type of test. However, *Kilrain* dealt with successive breathalyzer attempts, a testing procedure less intrusive and painful than blood testing. The similarities between the voluntary act of breathing into a breathalyzer and the involuntary act of bleeding into a test tube are limited. Even absent an interfering medical condition, an individual can control how much breath he breathes into a machine. Thus, if that individual produces an insufficient breath sample on a properly calibrated breathalyzer and is subsequently unable to explain why he could not give an adequate sample through medical evidence, that individual has refused to submit to the chemical test. *See Department of Transportation, Bureau of Driver Licensing v. Lohner*, 155 Pa.Commonwealth Ct. 185, 624 A.2d 792 (1993).