**Terry Lynn WRIGHT, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, Department of Transportation, Bureau of Driver Licensing.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 10, 2001.

Decided Nov. 16, 2001.

Daniel McGuire, New Bloomfield, for appellant.

Terrance M. Edwards and Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellee.

Before SMITH, Judge, KELLEY, Judge, and JIULIANTE, Senior Judge.

SMITH, Judge.

Terry Lynn Wright (Wright) appeals from an order of the Court of Common Pleas of the Forty–First Judicial District, Perry County Branch, that denied his appeal from a suspension of his driver's license for a period of one year by the Department of Transportation (DOT) for his refusal to submit to a blood test to determine blood alcohol content. Wright questions whether the trial court should have required the police officer, acting pursuant to Section 1547(b) of the Vehicle Code, as amended, 75 Pa.C.S. § 1547(b), to give Wright a reasonable alternative chemical test after being informed by Wright that he suffered from a medical condition that justified his refusal to submit to a blood test and whether Wright established by competent medical evidence that he had a medical condition that justified his refusal to submit to a blood test through Wright's own testimony.

Officer Robert J. Pavlovich, Jr., of the Duncannon Borough Police Department testified that on September 26, 1999, he observed a pickup truck make a wide sweeping left turn, which caused it to travel off the roadway over the solid white line and then swerve to the left and cross over the center double yellow line. The officer followed, and after the truck turned right on to Kemp Avenue he pulled the truck over. Wright was the driver. After Wright failed three field sobriety tests and declined to submit to the departmental personal breathalyzer test the officer arrested him for driving under the influence of alcohol. He was driven to Harrisburg Hospital for a blood test of blood alcohol content.

Wright testified that he had part of his stomach removed for ulcers some six or eight weeks before the night of his arrest, and he stated that he had the most severe problems with needles in his arms. He testified that no one but an absolute professional was allowed to touch him because his veins would explode and collapse. He stated that after having blood drawn for follow-up testing his arm was black and blue and painful from his hand to his shoulder for three weeks. When asked whether he explained this to the officer, Wright stated: "Probably not in detail, but, yeah, it was brought up to where I

had problems with needles going in, and I explained why I was fearful of them." N.T. at p. 32. He stated that he had a conversation with the lab technician or phlebotomist in which he elaborated on what his medical problem was and what had happened and the reason for his fear of needles. He believed that the officer was present at that time. He stated further that he thought that there was an option of what kind of test to take and that it was not explained to him that night that if he refused the blood test that he would not be given the option of taking a urine test. On cross-examination he stated that he refused the blood test because he is terrified of needles, and on redirect examination he stated that his fear of needles is created by the adverse effects that he had suffered from having blood drawn.

■ The trial court heard argument from the parties and then issued a memorandum directing the parties to review the cases of *Hatalski v. Department of Transportation, Bureau of Driver Licensing,* 666 A.2d 386 (Pa.Cmwlth.1995), and *Department of Transportation, Bureau of Driver Licensing v. Wilhelm,* 156 Pa. Cmwlth. 24, 626 A.2d 660 (1993), and to submit any further argument in writing. By order of December 11, 2000, the trial court denied Wright's appeal, stating that Wright had failed to present any evidence to support the claim that his fear of needles was caused by a medical condition which produced severe medical reaction to the drawing of blood by needles from his veins. This Court's review of the trial court's order is limited to determining whether the trial court's findings of fact are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion. *McLaughlin v. Department of Transportation, Bureau of Driver Licensing,* 751 A.2d 714 (Pa.Cmwlth.2000).

■ To sustain a license suspension under Section 1547(b) of the Vehicle Code, DOT has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. *Lemon v. Department of Transportation, Bureau of Driver Licensing,* 763 A.2d 534 (Pa.Cmwlth.2000). Once DOT meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test. *Id.* Where a licensee suffers from a medical condition that affects his or her ability to perform a test and that condition is not obvious, a finding that a licensee was unable to take the test for medical reasons must be supported by competent medical evidence. *Id.* (citing *Wilhelm* ).

Wright first asserts that the officer should have given him a reasonable alternative chemical test after being informed of Wright's condition that justified refusal of a blood test. He notes that the Court has stated that when a licensee suffers from a condition that affects one's ability to perform the test and that is not obvious, "the licensee is required to inform the officer of the condition so an alternative chemical test that the licensee could perform can be administered." *Hatalski,* 666 A.2d at 390. Wright acknowledges that in *Department of Transportation, Bureau of Driver Licensing v. Mease,* 148 Pa. Cmwlth. 14, 610 A.2d 76 (1991), the Court held that even a doctor's note stating that a driver was unable to receive an injection due to his fear of needles was not of such legal significance as to negate the implied

consent of the driver to submit to a blood test. The Court stated that the driver had failed to satisfy his burden of proving by competent medical evidence that he was physically unable to take the blood test or that he was not capable of making a knowing and conscious refusal.

Wright argues, however, that this case is distinguishable because it does not involve a fear based upon hypothetical or conjectural consequences but rather based upon the excessive, persistent, adverse medical reactions that his body experiences when it is subjected to intrusion with a needle, reactions which are beyond the normal bruising in the immediate area and initial pain from an injection or an attempt to draw blood. Wright cites *Department of Transportation, Bureau of Driver Licensing v. Fleming*, 119 Pa.Cmwlth. 343, 547 A.2d 488 (1988), in support. There the Court held that a licensee's fear of needle puncture to his recent extensive skin grafts, which were obvious when displayed at the trial court hearing, was a reasonable justification for his refusal of a blood test. Wright acknowledges that his condition was not obvious, but he stresses that a legitimate fear of adverse consequences may justify refusal. He contends that the officer, upon being informed of Wright's fear of giving blood and his well-founded reasons for it, lost his normally unfettered discretion to choose the type of chemical testing.

Wright further argues that he should not be required to use expert medical testimony in order to provide competent medical evidence of the effect he suffers from needle intrusions. He acknowledges that any finding that he was unable to perform the test must be supported by competent medical evidence. *Bridges v. Department of Transportation, Bureau of Driver Licensing*, 752 A.2d 456 (Pa.Cmwlth.2000). Wright asserts, however, that the Court

has never delineated a bright-line rule requiring expert medical testimony in order to supply competent medical evidence. He argues that in *Lemon* the Court reasoned that expert medical evidence was not required to establish that the driver had a pulmonary problem because the trial court believed him. Such testimony was necessary only to establish the extent to which his problem would have prevented him from performing the breathalyzer test.

In *Department of Transportation v. Gross*, 146 Pa.Cmwlth. 1, 605 A.2d 433 (1991), the Court held that expert medical testimony was necessary not to establish that a driver suffered from allergies but rather to determine whether her problem would preclude her from performing the test. Wright asserts that his case is different from *Lemon* and *Gross* because, if his testimony was credited, there was no need for medical testimony as to the seriousness of his condition. Further, Wright contends that, as the person who actually experienced the reactions, he was qualified to testify about his medical condition. Although expert medical opinion would be required to explain the reactions, it was not needed to establish the medical basis for Wright's fear of needles, i.e., his knowledge of their effect.

DOT in response emphasizes that where a driver's claimed inability to perform a chemical test is not obvious it must be established by competent medical evidence. *Lemon*; *Hatalski*. Further, it argues that Wright's self-serving lay testimony is not sufficient to establish a medical reason for his failure to perform the blood test. It cites *Gross*, which held that a trial court was justified in crediting the driver's testimony concerning her allergies but that it erred in concluding that the driver's testimony constituted competent medical evidence to meet her burden. Unlike the skin grafts of the driver in

*Fleming,* Wright's alleged extreme reaction was not obvious: he did not display an arm illustrating the claimed problem. DOT notes that, despite his assertions of extreme reactions while hospitalized and afterward, Wright offered no evidence in the form of medical testimony or medical records to support his claims.

■ The Court concludes that to accept Wright's argument that he was capable of providing the required medical evidence would be to overrule the many cases holding that a driver's simple declaration of incapacity to perform a chemical test, without medical proof, will not justify a refusal. *Gross; Department of Transportation, Bureau of Driver Licensing v. La Salle,* 102 Pa.Cmwlth. 422, 520 A.2d 131 (1987). Even assuming arguendo that Wright's statements to the police officer constituted notice of a medical condition, Wright's failure to establish such condition through competent medical testimony meant that the duty to offer another kind of test was not triggered. The trial court is affirmed.

### ORDER

AND NOW, this 16th day of November, 2001, the order of the Court of Common Pleas of the Forty–First Judicial District, Perry County Branch, is affirmed.