IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Melissa Jo Norris,                              :
                              Appellant         :
                                                :
              v.                                :
                                                :
Commonwealth of Pennsylvania,                   :
Department of Transportation,                   :   No. 1569 C.D. 2023
Bureau of Driver Licensing                      :   Argued: October 8, 2024


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE MATTHEW S. WOLF, Judge


OPINION
BY JUDGE FIZZANO CANNON                          FILED: November 26, 2024


          Melissa Jo Norris (Licensee) appeals from the December 1, 2023 order
of the Court of Common Pleas of Clearfield County (Trial Court) that dismissed
Licensee's statutory appeal from a 12-month driver's license suspension imposed by
the Commonwealth of Pennsylvania, Department of Transportation, Bureau of
Driver Licensing (DOT), pursuant to what is commonly known as the Vehicle
Code's Implied Consent Law, 75 Pa. C.S. § 1547(b) (Implied Consent Law), as a
result of Licensee's refusal to submit to chemical testing upon her arrest for driving
under the influence of alcohol or a controlled substance (DUI).[1]  Upon review, we
affirm.

          The basic facts underlying this matter are relatively straightforward.
On May 5, 2023, the Pennsylvania State Police conducted a wellness check of a

_____
[1] 75 Pa. C.S. § 3802.

woman reportedly passed out in a vehicle in the parking lot of the Dollar General in Irvona, Clearfield County, Pennsylvania. *See* Trial Court Opinion and Order dated December 1, 2023 (Trial Court Order) at 1. Upon approaching the vehicle, the police observed Licensee asleep in the driver's seat with the vehicle's engine running and the key fob in Licensee's lap. *See* Trial Court Order at 1. Upon awakening Licensee, the police observed that Licensee appeared dazed, with bloodshot and glassy eyes, and displayed mumbled speech that was difficult to understand. *See id.* The police believed at that time that Licensee was under the influence of a controlled substance. *See id.*

After Licensee failed two of three field sobriety tests[2] and admitted that she had used narcotics the night before, the police placed Licensee under arrest for suspicion of DUI and transported her to the hospital for a blood draw. *See* Trial Court Order at 1-2. At the hospital, the police read Licensee DOT's form DL-26B (DL-26B Form) blood testing refusal warnings in their entirety[3] and Licensee

---

[2] Licensee first satisfactorily performed the Horizontal Gaze Nystagmus test, followed by the walk-and-turn test and the one-legged stand, each of which indicated impairment. *See* Trial Court Order at 1-2.

[3] The DL-26B Form's blood testing warnings read as follows:

> It is my duty to as a police officer to inform you of the following:
>
> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> 2. I am requesting that you submit to a chemical test of blood.
>
> 3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months. If your operating privilege is suspended for refusing

consented to have her blood drawn. *See* Trial Court Order at 2; *see also* DL-26B Form, Reproduced Record (R.R.) at 1a.[4] After multiple unsuccessful attempts by the phlebotomist to obtain a blood sample, Licensee verbally withdrew her consent to the blood testing. *See* Trial Court Order at 2. After Licensee withdrew her consent, the police noted the refusal on the DL-26B Form, which Licensee signed acknowledging that she had received the warnings thereon and had refused to consent to further testing. *See* Trial Court Order at 2; *see also* DL-26B Form, R.R. at 1a.

The police then transported Licensee to the State Police barracks, where they secured a search warrant for Licensee's blood. *See* Trial Court Order at 2. The police and Licensee then returned to the hospital with the warrant to further attempt to obtain a blood sample. *See id.* Licensee was again cooperative and not combative, however, once more the phlebotomist was unable to secure a blood sample from Licensee. *See id.* After this single further unsuccessful attempt to obtain a blood sample, Licensee stated that she did not want to participate in any further attempts to extract a sample of her blood. *See id.*

---

chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

DL-26B Form, Reproduced Record (R.R.) at 1a.

[4] Licensee did not number the Reproduced Record as required by Pennsylvania Rule of Appellate Procedure 2173. The Court, however, has supplied the appropriate pagination for the Reproduced Record beginning with the DL-26B Form as page "1a" in accordance with Rule 2173.

3

Thereafter, DOT informed Licensee that her operating privilege would be suspended and she appealed (Suspension Appeal). The Trial Court conducted a hearing on September 8, 2023, and denied the Suspension Appeal by Opinion and Order dated December 1, 2023. *See* Trial Court Order at 2, 6 & Order; *see also* Notes of Testimony, September 8, 2023 (N.T.). Licensee timely appealed to this Court.[5]

Licensee raises one claim on appeal before this Court: that the Trial Court erred by determining that her conduct constituted a refusal to consent to chemical testing under the Implied Consent Law. *See* Licensee's Br. at 9 & 15-20. Licensee argues that where she cooperated with the attempted blood draws and the phlebotomist was unable to obtain a blood sample, she did not refuse to consent to requested chemical testing for Implied Consent Law purposes. *See id.* at 15-20. Licensee is not entitled to relief.

The Implied Consent Law provides:

> **(a) General rule.--**Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of [S]ection 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2)

---

[5] "Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by [substantial] evidence and whether the trial court committed an error of law or an abuse of discretion." *Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017).

(relating to illegally operating a motor vehicle not equipped with ignition interlock).

**(b) Civil penalties for refusal.--**

(1) If any person placed under arrest for a [DUI offense] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, [DOT] shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

(ii) For a period of 18 months if any of the following apply:

(A) The person's operating privileges have previously been suspended under this subsection.

(B) The person has, prior to the refusal under this paragraph, been sentenced for:

(I) an offense under [S]ection 3802;

(II) an offense under former [S]ection 3731;

(III) an offense equivalent to an offense under subclause (I) or (II); or

(IV) a combination of the offenses set forth in this clause.

(2) It shall be the duty of the police officer to inform the person that:

5

(i) the person's operating privilege will be suspended upon refusal to submit to chemical testing and the person will be subject to a restoration fee of up to $2,000; and

(ii) if the person refuses to submit to chemical breath testing, upon conviction or plea for violating [S]ection 3802(a)(1), the person will be subject to the penalties provided in [S]ection 3804(c) (relating to penalties).

(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspension for other reasons.

75 Pa.C.S § 1547. This Court has observed:

To sustain a license suspension under [the Implied Consent Law], DOT has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so[,] and (4) the licensee was warned that refusal would result in a license suspension. Once DOT meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

*Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013) (quoting *Wright v. Dep't of Transp., Bureau of Driver Licensing*, 788 A.2d 443, 445 (Pa. Cmwlth. 2001)). Here, Licensee challenges only the Trial Court's determination that she refused to consent to requested chemical testing.

6

"The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015); *see also Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 281 (Pa. Cmwlth. 2018). The question of refusal by a licensee to consent to chemical testing "turn[s] on a consideration of whether the [licensee's] overall conduct demonstrates an unwillingness to assent to an officer's request for chemical testing." *Nardone*, 130 A.3d at 749. Pennsylvania courts have long and consistently held that anything less than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal to consent thereto. *See Dep't of Transp., Bureau of Driver Licensing v. Renwick*, 669 A.2d 934, 939 (Pa. 1996); *see also McKenna v. Dep't of Transp., Bureau of Driver Licensing*, 72 A.3d 294 (Pa. Cmwlth. 2013) (licensee's questioning police regarding consequences of refusal and refusing to sign consent constituted refusal to consent to chemical testing); *Hudson v. Dep't of Transp., Bureau of Driver Licensing*, 830 A.2d 594 (Pa. Cmwlth. 2003) (repeated interruption and aggressive behavior while being read warnings constituted a refusal to consent to chemical testing). Additionally, explicit refusal is not required to find a licensee refused to consent to chemical testing; "a licensee's conduct may constitute a refusal." *Park*, 178 A.3d at 281; *see also Walkden v. Dep't of Transp., Bureau of Driver Licensing*, 103 A.3d 432, 440 (Pa. Cmwlth. 2014) (a general unwillingness to submit to testing demonstrated by a licensee's overall conduct demonstrated a refusal to consent to chemical testing). Additionally, we observe that, as factfinder in license suspension appeals, the trial court determines both the credibility of witnesses and weight assigned to the evidence presented. *Park*, 178 A.3d at 284. "It is well settled that

7

the trial court's credibility determinations in a license suspension appeal will not be second-guessed on appeal." *Id.*

Further, this Court has previously determined that the Implied Consent Law permits multiple attempts at testing, and withdrawal of consent after unsuccessful attempted testing can constitute a refusal. *See Winebarger v. Dep't of Transp., Bureau of Driver Licensing*, 655 A.2d 1093, 1096 (Pa. Cmwlth. 1995). In *Winebarger*, a licensee initially consented to a blood draw but withdrew his consent after two unsuccessful attempted blood draws. *See id.* at 1095-96. The trial court found the licensee's withdrawal of consent constituted a refusal. *See id.* at 1096. This Court affirmed, noting that the Implied Consent Law permits "one or more" attempts at chemical testing, including multiple attempts at the same type of test. *See id.* This Court expressly declined to limit, as a matter of law, the number of permissible blood draw attempts before subsequent refusals would be rendered meaningless for compliance purposes. *See id.* at 1095.

Here, DOT presented the testimony of Pennsylvania State Trooper Austin Woolcock at the hearing on the Suspension Appeal. *See* N.T. at 3-16. Trooper Woolcock testified that Licensee initially consented to the blood draw and was cooperative throughout the process prior to refusing. *See* N.T. at 7, 9, 11-12 & 15. Trooper Woolcock explained that a phlebotomist made multiple attempts[6] to secure a blood sample from Licensee, without success. *See* N.T. at 7-8, 9-10, 11-12. After these multiple unsuccessful attempts to obtain her blood, Licensee verbally

___

[6] The record does not definitively indicate the exact number of attempts made by the phlebotomist to obtain a sample of Licensee's blood during this first visit to the hospital. Trooper Woolcock related that, prior to Licensee withdrawing her consent, the phlebotomist "did poke her a couple of times to get a sample but was unsuccessful." N.T. at 9. On cross-examination, Trooper Woolcock repeated that the phlebotomist made multiple attempts to obtain Licensee's blood, but not more than five or six. *See* N.T. at 11.

withdrew her consent to the blood draw by explaining "that she was done and she was not going to get poked anymore." N.T. at 9-10. Trooper Woolcock took this statement as a refusal and transported Licensee to the State Police barracks, where he obtained a search warrant for Licensee's blood. *See* N.T. at 10 & 12-13. After securing the search warrant, Trooper Woolcock again transported Licensee to the hospital, where she was again cooperative with a further attempt to take her blood, which also proved unsuccessful.[7] *See* N.T. at 10 & 13-15. The second time in the hospital, Licensee verbally withdrew her consent to the blood draw after only one failed attempt to secure a sample. *See* N.T. at 13-15.

Based on this evidence, the Trial Court concluded that Licensee refused by failing to complete the requested chemical testing. *See* Trial Court Order at 5. The Trial Court observed that the above evidence of refusal shifted the burden to Licensee to prove by competent medical evidence that she was physically unable to take the test or make a knowing and conscious refusal. *See id.* at 6. The Trial Court then explained that Licensee failed to meet her burden because she neither testified nor called any expert witness to attest to her physical inability to take the test or that she was not capable of making a knowing or conscious refusal. *See id.* The Trial Court then dismissed the Suspension Appeal, observing that

> [w]hile th[e Trial C]ourt recognizes that [Licensee] put forth a good faith effort to comply and complete the chemical testing, she ultimately failed to do so. [Licensee] had the opportunity to establish that she was physically and/or medically unable to take the test at the hearing, but failed to produce any evidence or witnesses to attest to such an inability.

---

[7] Trooper Woolcock testified that he did not observe any blood being drawn out of Licensee's artery during this attempted blood draw. *See* N.T. at 15.

9

*Id.* at 6.

We find no error with the Trial Court's determination. The Implied Consent Law requires not only that a licensee submit to and take requested chemical testing, but also that the licensee complete such testing. *See Murray v. Commonwealth*, 598 A.2d 1356, 1358 (Pa. Cmwlth. 1991). Here, Licensee did not complete the requested testing in this case. While she did initially consent to the blood draw, Licensee withdrew her consent after unsuccessful attempts to complete the requested testing and before a blood sample could be successfully obtained by the authorities.[8] Simply put, the Implied Consent Law permits multiple attempts at chemical testing. *See* 75 Pa.C.S. § 1547(a); *Winebarger*, 655 A.2d at 1096. Thus, under the Implied Consent Law and the existing case law of this Commonwealth, Licensee's withdrawal of her consent to the blood draw constitutes a refusal of chemical testing. *See id.* Therefore, Trial Court did not err in determining that DOT proved such a refusal based on the testimony of Trooper Woolcock.

DOT having established a refusal, the burden then shifted to Licensee to establish either that she was not capable of making a knowing and conscious refusal or that she was physically unable to take the test. Licensee put forth no evidence that she was incapable of making a knowing and conscious refusal, and her express, verbal withdraw of her consent surely evidences her capability to do so. Likewise, Licensee put forth no expert medical evidence to support a claim that she was physically incapable of submitting to the testing, which again was evidenced by

---

[8] We note that the refusal in this matter concerns only Licensee's initial refusal during her first trip to the hospital. When Licensee returned to the hospital with the police for the second time, the blood draw was conducted under the authority of the search warrant recently secured by the police and was not subject to Licensee's consent.

10

her having done so prior to withdrawing her consent. Thus, Licensee did not carry her shifted burden to establish that she could not knowingly refuse or physically take the requested testing. *See Weinbarger*, 655 A.2d at 1096 (finding that where licensee failed to put forth medical evidence that he was physically unable to give blood sample and evidence of record indicated he was capable, licensee failed to carry shifted burden requiring he establish that he could not have knowingly refused or was physically incapable of complying with requested chemical testing).

To the extent Licensee's withdrawal of her consent was occasioned by the phlebotomist's failure to successfully complete the blood draw, the record contains no explanation why the phlebotomist was unable to successfully draw a blood sample. We observe, however, that the Implied Consent Law does not provide an exception for the inability of a phlebotomist to secure a blood draw, nor does the Implied Consent Law otherwise provide for any number of unsuccessful attempts to draw blood after which a licensee would be excused from subjecting herself to further attempts. *See* 75 Pa.C.S. § 1547(b). Thus, while we appreciate the argument that a licensee should not be required to submit herself to repeated unsuccessful blood draw attempts occasioned either by some medical condition or the incompetence of a phlebotomist engaged to complete the blood draws, the Implied Consent Law simply does not provide such an exception to the requirement that a licensee submit to chemical testing when requested following a DUI arrest. *See id.* Further, even assuming the Implied Consent Law contemplated or allowed such an exception, the facts of the instant matter would not warrant a different outcome. The record here does not reveal that the phlebotomist in any way acknowledged or recognized the futility of the efforts to secure a blood sample or otherwise gave up on the endeavor to secure a sample. Instead, the record reveals that Licensee

purposely withdrew her consent to continue with testing to avoid the continued discomfort required by such testing. Thus, it was Licensee's volition that ended the testing, not an expression by the medical professional performing the testing that further attempts to complete the testing would prove futile.[9]

Further, we observe that Licensee's good faith in originally consenting to the blood draws is irrelevant to the matter. In cases involving breath testing conducted via breathalyzer machine, this Court has noted that failure to complete chemical testing represents a refusal, regardless of intent. *See*, *e.g.*, *Sweeney v. Dep't of Transp., Bureau of Driver Licensing*, 804 A.2d 685, 687 (Pa. Cmwlth. 2002) (insufficient breath sample provided into breathlyzer machine). While we appreciate that a blood draw differs from chemical testing performed with a breathalyzer in that it relies on the skill of the phlebotomist[10] and the availability of adequate veins/arteries as opposed to the effort of the licensee, the Implied Consent Law still requires that a licensee must complete the testing, which did not occur in this instance.

---

[9] While we appreciate the subtle difference between a fear of needles and an unwillingness to subject oneself to repeated attempts at a blood draw requiring a needle stick, because Licensee withdrew her consent, this case is akin to cases in which this Court has found that a licensee's aversion to or fear of needles, even supported by medical evidence, is an insufficient reason to excuse licensee non-cooperation with requested chemical testing. *See Lombardo v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 1959 C.D. 2014, filed June 8, 2015), slip op. at 6 (citing *Jacobs v. Dep't of Transp., Bureau of Driver Licensing*, 695 A.2d 956, 958 (Pa. Cmwlth. 1997)).

[10] In making this observation, we pass no judgment on the competency of the phlebotomist involved in the instant matter.

For these reasons, we affirm the Trial Court Order.

_____
CHRISTINE FIZZANO CANNON, Judge

President Judge Cohn Jubelirer dissents.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Melissa Jo Norris,                          :
                            Appellant        :
                                            :
              v.                            :
                                            :
Commonwealth of Pennsylvania,              :
Department of Transportation,              :    No. 1569 C.D. 2023
Bureau of Driver Licensing                 :

## **O R D E R**

AND NOW, this 26th day of November, 2024, the December 1, 2023 order of the Court of Common Pleas of Clearfield County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge