**Mary Jill BROWN, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Argued March 10, 1999.

Decided Sept. 17, 1999.

Timothy P. Walsh, Media, for petitioner.

Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for respondent.

Before COLINS, President Judge, and DOYLE, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., KELLEY, J. and FLAHERTY, J.

FLAHERTY, Judge.

Mary Jill Brown (Licensee) appeals from an order of the Court of Common Pleas of Delaware County (trial court) which denied her statutory appeal of a suspension of her operating privilege imposed by the Department of Transportation, Bureau of Driver Licensing (Department). The suspension was imposed pursuant to Section 1547(b)(1) of the Vehicle Code (Code), 75 Pa.C.S. § 1547(b)(1).[1] We reverse.

On October 24, 1997, Marple Township police officer Francis J. Mercadante (Offi-

---

1. Under Section 1547(b)(1) of the Code, which is popularly referred to as the Implied Consent Law, the Department is required to suspend for one year the operating privilege of any person whom a police officer reports has refused to submit to chemical testing.

cer Mercadante) observed a vehicle start to make an illegal left turn at an interchange. For reasons unknown to the officer the vehicle ceased making the illegal turn and continued in the direction it had been traveling. At that time Officer Mercadante turned his vehicle around and followed the vehicle he had observed. The vehicle continued to travel in the left lane and when it reached a second interchange it made a left turn from the left travel lane instead of making the turn from the left turn lane. In addition, the light governing the turn lane was a steady red. At that point Officer Mercadante stopped the vehicle.

Officer Mercadante found Licensee was the operator of the vehicle and that her four year old daughter was asleep in a child safety seat in the rear of the vehicle. Officer Mercadante detected a strong odor of alcohol on Licensee and noted that her speech was slurred and her eyes were bloodshot. The officer administered two field sobriety tests which Licensee failed, so he placed Licensee under arrest for driving under the influence. At the time of her arrest the officer verbally informed Licensee of the requirements of the Implied Consent Law. Licensee assented to going to the hospital to take a blood test. She then asked what would happen to her daughter and was advised by the officer that her daughter would be taken back to the police station until the she returned from the hospital. Licensee then refused to go to the hospital without her daughter. The officer did not at that point record a refusal.

Licensee and her daughter were transported to the police station where Licensee was read the Implied Consent warning and was again asked to submit to a blood test. She again said she would take the test, but only if her daughter was allowed to be with her. Officer Mercadante then record-ed a refusal to submit to the blood test, which was reported to the Department.

By official notice dated November 11, 1997, the Department suspended Licensee's driving privilege for one year for refusal to submit to chemical testing. Licensee appealed to the trial court. At the de novo hearing, Licensee and Officer Mercadante testified that Licensee had agreed to the blood test on two occasions, but only if her daughter could accompany her to the hospital. Licensee testified that she had to be certain that her daughter was properly cared for. The trial court expressed sympathy with Licensee, but concluded that she had refused the blood test and denied her appeal. Licensee then appealed to this Court.

Licensee raises one issue for our review, that is whether the trial court erred in finding that Licensee, after agreeing to submit to the blood test on two occasions, had refused testing simply because she did not want to leave her child with strangers while she was taken to the hospital for the blood test.[2] Whether the conduct as found by the trial court constitutes a refusal is a question of law. *Mueller v. Department of Transportation, Bureau of Driver Licensing*, 657 A.2d 90 (Pa.Cmwlth.1995).

It is well settled that to sustain a license suspension under Section 1547 of the Code, the Department has the burden of establishing that the driver (1) was arrested for drunken driving by a police officer who had reasonable grounds to believe that the motorist was operating, or actually controlling or operating the movement of a motor vehicle, while under the influence of alcohol; (2) was requested to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal would result in a license suspension. *Department of Transportation v. O'Connell*, 521

---

**2.** Our review in a license suspension case is limited to determining whether the trial court's findings of fact are supported by substantial evidence, whether errors of law were committed, or whether the trial court's deci-sion demonstrates a manifest abuse of discretion. *Gombar v. Department of Transportation, Bureau of Driver Licensing,* 678 A.2d 843 (Pa.Cmwlth.1996).

Pa. 242, 555 A.2d 873 (1989). Licensee argues that the Department has not met its burden of proving that Licensee refused to submit to a blood test when requested to do so. We must agree with Licensee.

The law is clear that a refusal is defined as "anything substantially less than unqualified, unequivocal assent" to chemical testing. *Winebarger v. Department of Transportation, Bureau of Driver Licensing,* 655 A.2d 1093 (Pa.Cmwlth.1995). In addition, because § 1547 of the Code literally requires only that a motorist submit to chemical testing, and the sanction of license suspension applies only to a refusal of such testing, we have held that a suspension under § 1547 may not be supported by a licensee's refusal to satisfy any condition not explicitly required by § 1547. *Conrad v. Department of Transportation,* 142 Pa.Cmwlth. 642, 598 A.2d 336 (Pa. Cmwlth.1991). (Licensee agreed to submit to blood testing on three occasions but refused to sign any documents before being tested. This Court concluded that making the signing of a consent form a prerequisite to testing was not permissible and the refusal of the licensee to sign the consent form was not a refusal to take the test.)[3]

In the instant case, Licensee agreed two times to submit to blood testing as requested by Officer Mercadante. But, the officer conditioned Licensee's test on leaving her four year old child at the police station with strangers while she was taken to the hospital to have blood drawn.[4] This condition is not explicitly required by § 1547. While the trial court found that the officer made a reasonable attempt to explain why the child could not go along to the hospital (trial court opinion p. 3), we find absolutely no support anywhere in the record for this finding and we cannot understand why the child could not have accompanied her mother to the hospital for testing.

As we stated in *Conrad,* "we are not unmindful that anything substantially less than an unequivocal assent to testing constitutes a refusal. However, we do not believe that this principle extends to a situation where the police ... fail to give a licensee a meaningful opportunity to satisfy the requirements of § 1547 by impermissibly linking extraneous requirements to the test itself." *Id.* at 343. In this case, after careful consideration, we must conclude that Licensee was not given a meaningful opportunity to satisfy the requirements of § 1547. When faced with having to leave her child alone with strangers, Licensee, as any good parent would do, chose to stay with her child regardless of the consequences. She did not refuse to take the blood test, in fact she agreed to submit to the test two times. Instead, Licensee only refused to leave her child. This requirement was not imposed by the Legislature in the Vehicle Code, but was unnecessarily imposed by the officer. It was not related to the test itself and there was no explanation given for not allowing the child to accompany the mother to the hospital. Therefore, Licensee's refusal to leave her four year old child while she submitted to a blood test was not substantially less than the unqualified, unequivocal assent to testing and does not constitute a refusal. In this specific factual situation we conclude that Licensee's refusal to

---

**3.** While *Conrad* may have been overruled by this Court in *Smith v. Department of Transportation, Bureau of Driver Licensing,* 655 A.2d 232 (Pa.Cmwlth.1995), the Pennsylvania Supreme Court relied on *Conrad* in *Department of Transportation v. Renwick,* 543 Pa. 122, 669 A.2d 934 (1996). Accordingly, *Conrad* is again good law. *See Zerbe v. Department of Transportation, Bureau of Driver Licensing,* 676 A.2d 294, n. 9 (Pa.Cmwlth.1996).

**4.** We note that at the time of the officer's first request the child was still asleep and had Licensee agreed to leave the child, the child would most likely have awakened at the police station amongst strangers and without her mother being present.

leave her four year old daughter with strangers was reasonable.

Accordingly, we conclude that the trial court erred in denying Licensee's appeal and suspending her driving privilege for one year and the order of the trial court is reversed.

## *ORDER*

AND NOW, this 17th day of September, 1999, the order of the Court of Common Pleas of Delaware County, at number 97–17706, dated April 8, 1998, is reversed.

KELLEY, Judge, concurring.

I concur with both the reasoning and result of the majority, but would reverse the order of the trial court on the following additional grounds.

In my opinion this case presents an example of state action which is unjustified, inappropriate, and contrary to common sense. In this matter, Licensee twice expressly assented to the officer's request that she submit to a blood alcohol test. After Licensee initially and unconditionally agreed to submit to the test, the police officer informed Licensee that another officer would take her four-year old daughter to the police station while Licensee would be taken to the hospital to have the test performed. Licensee understandably, and in my opinion rightly, refused to leave her young daughter alone at the police station.

The real crux of this case is a mother's right to determine whether it is in the best interests of her child to be separated from her mother under the existing circumstances. I find it instructive to note that the record from the trial court contains no references to any consideration by the police of bringing child endangerment charges against Licensee under Section 4304(a) of the Pennsylvania Crimes Code.[1] That the police did not contemplate such a charge indicates to me that Licensee was the person charged with determining, and fit to determine, the course of action in the best interest of her child at all times during the events in issue. The esteemed majority describes Licensee's actions in refusing to leave her child at the police station as her "choice", but I would go further and note that Licensee, under Section 4304, had a *duty* to keep her daughter in her care rather than to leave the child in the care of strangers whose qualifications regarding child care could be most generously described as unknown.

Our Supreme Court has held that the duties articulated within Section 4304 are to be given meaning by reference to the common sense of the community, and to the broad protective purposes for which it was enacted. *Commonwealth v. Mack,* 467 Pa. 613, 359 A.2d 770 (1976). We are fortunate, in any attempt to divine the common sense of the community, to have on the record of the trial court below the Honorable Robert A. Wright's remarks that common sense dictates that any mother would not want to leave her child with strangers. Reproduced Record (R.R.) at 47a. Judge Wright also commented, as I believe an overwhelming majority of members of the community would, that he himself would have made the same choice that Licensee made under the same circumstances.

Additionally, and especially in light of the fact that no case law directly on point exists regarding this issue, I believe that the common sense of any community would dictate that a parent should not voluntarily leave a child in the care of any individual who would place that four-year old child into a vehicle without restraining the child with a safety belt, as the officer in this case did when he transported Licensee and her daughter to the police station. R.R. at 41a.

---

1. "A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa. C.S. § 4304(a).

While the outstanding job generally performed by police officers of our Commonwealth in protecting our citizenry can be easily assumed, their ability to spontaneously provide proper child care for a four-year old child cannot be assumed to be within their field of expertise and training. *See, e.g.,* the facts surrounding *White v. Rochford,* 592 F.2d 381 (7 th Cir. Ill.1979) (police officers' judgment that minors could take care of themselves following arrest of their parent/guardian resulted in abandonment of minors, without adult supervision, on the side of a major highway in inclement weather). In the instant case, the record contains no references to any assertions by the police that they are qualified or experienced in caring for young children.

Under the U.S. Constitution, the integrity of the parent/child relationship has been granted protection under the Due Process Clause of the Fourteenth Amendment[2], the Equal Protection Clause of the Fourteenth Amendment[3], and the Ninth Amendment[4]. It is both common sense and Federal law, that, absent compelling circumstances, the state may not interfere with the parent/child relationship.[5] I am not necessarily suggesting that the instant case demands a Due Process or other constitutional analysis, and I recognize that these Federal precedents are somewhat distinguishable factually. They are instructive, however, in illuminating the gravity inherent in any state action to separate parent from child, and the lengths to which our state and federal courts have gone to protect this relationship. They are relevant to this case in that they emphatically demonstrate that state action that infringes upon familial relationships has a long history of being disallowed without strong justification by the state actor.

I note that the record is bereft of any reason as to why Licensee had to be separated from her daughter in order to undergo the blood alcohol test at the hospital. The trial court stated that the officer made a reasonable attempt to explain why this had to be done, however, the details of this explanation are not in the record. That a police officer could undertake such a separation without subsequently being able to place on the record any justification for the separation is inconceivable to me, and should not be allowed to stand upon a legal argument that ultimately amounts to "because I said so". I find this especially true in the instant case, where the record reveals that the hospital to which Officer Mercadante intended to take Licensee was a scant two minutes from the spot where he stopped Licensee. R.R. at 44a. In light of the fact that Licensee appears to have been taken to the police station for the purpose of signing a consent form[6] that was not a prerequisite to the blood alcohol testing in question[7], and the proximity of the hospital, the officer's decision seems perplexing at best, and impermissible at worst given the complete absence of justification or offered state interest. Because the record is devoid of a valid reason to separate Licensee from her four-year old daughter, I am bewildered as to why the officer did not allow the child to accompany her mother to the hospital. This

2. *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

3. *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

4. *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

5. *Moore v. City of East Cleveland, Ohio,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977).

6. I would note that the Marple Township Police Station is equipped with a Breathalyzer, but at the time of Licensee's arrest it had been inoperable for over seven weeks due to the fact that its calibration had not been maintained. R.R. at 34a.

7. *See Conrad,* discussed by the majority.

simple accommodation to the circumstances would have allowed the officer to acquire the requisite evidence for a possible prosecution of Licensee, avoided the imposition of a testing condition not mandated by Section 1547, and most importantly, preserved untrammeled Licensee's right and duty to insure that her young child was properly cared for.

Accordingly, I agree with the reversal of the trial court's order.

PELLEGRINI, Judge, dissenting.

I respectfully dissent from the majority's holding that Mary Jill Brown (Licensee) had an excuse to refuse to submit to a chemical alcohol test under Section 1547(b)(1) of the Vehicle Code (Code)[1] because her child was not allowed to accompany her to chemical testing.

After being stopped for an illegal turn and then failing two field sobriety tests, Licensee was arrested for driving while intoxicated. At the time of her arrest, her four-year old child was in the back seat of her car. She was then requested to submit to chemical testing at a local hospital, to which she initially agreed, but upon learning that her child would not be accompanying her to the hospital but instead would be taken by police officers to the station while she was at the hospital, Licensee then refused to submit to chemical testing unless her child could accompany her to the hospital. Both she and the child were taken to the station, where she again refused to submit to chemical testing unless her child was taken with her to the hospital. Based on her refusals to submit to chemical testing, PennDot suspended

her license for one year. Licensee appealed the suspension to the trial court which affirmed the suspension.

Analogizing this situation to where a licensee refuses to sign a hospital waiver of liability form, which we have held excuses a refusal to sign because it imposes an additional condition to testing not required by Section 1547,[2] the majority reverses, concluding that Licensee's refusal to submit to chemical testing because her child could not accompany her was also an impermissible condition. While the majority may be sympathetic to a mother who does not wish to be separated from her child, a questionable sympathy in this case for a mother who may have been jeopardizing her child's life by driving while intoxicated, I disagree with the majority's holding because rather than being an impermissible additional condition, being separated from a child is the normal and unavoidable consequence of being arrested, whether the arrest was driving while intoxicated, child abuse or homicide by vehicle.

Accordingly, I dissent.

Judge DOYLE joins in this dissenting opinion.

---

1. Section 1547(b)(1) of the Code provides:
   **(b) Suspension for refusal.** —(1) If any person placed under arrest for a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the

police officer, the department shall suspend the operating privilege of the person for a period of 12 months.
75 Pa.C.S. § 1547(b)(1).

2. *Conrad v. Department of Transportation,* 142 Pa.Cmwlth. 642, 598 A.2d 336 (1991).