# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Garlick,               :
             Appellant     :
               :
        v.        :  No. 48 C.D. 2017
               :  Argued: November 15, 2017
Commonwealth of Pennsylvania,   :
Department of Transportation,    :
Bureau of Driver Licensing     :

BEFORE:    **HONORABLE MARY HANNAH LEAVITT,** President Judge
                **HONORABLE RENÉE COHN JUBELIRER,** Judge
                **HONORABLE ROBERT SIMPSON,** Judge
                **HONORABLE P. KEVIN BROBSON,** Judge
                **HONORABLE ANNE E. COVEY,** Judge
                **HONORABLE MICHAEL H. WOJCIK,** Judge
                **HONORABLE JOSEPH M. COSGROVE,** Judge[1]

**OPINION BY**
**JUDGE COHN JUBELIRER**          **FILED: January 3, 2018**

Robert Garlick (Licensee) appeals from the January 4, 2017 Order of the Court of Common Pleas of Erie County (common pleas) denying his appeal from a one-year suspension of his operating privilege imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT), under Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa. C.S. § 1547(b)(1)(i), commonly referred to as the Implied Consent Law.[2] On appeal, Licensee argues his

---

[1] This decision was reached before the conclusion of Judge Cosgrove's service with this Court on December 31, 2017.

[2] Section 1547(b)(1)(i) reads, in pertinent part, as follows:

suspension must be reversed because he was not warned, in accordance with Section 1547(b)(2)(ii) of the Vehicle Code, 75 Pa. C.S. § 1547(b)(2)(ii), that his refusal to submit to a blood test would subject him to enhanced criminal penalties under Section 3804(c) of the Vehicle Code, 75 Pa. C.S. § 3804(c). Before addressing Licensee's argument, however, it is necessary for the Court to review the recent legal developments that have altered the way in which courts have applied implied consent laws and the penalties that may result from a violation of these laws.

## I.    Legal Background

Beginning on February 1, 2004, Section 1547(b)(2)(ii) of the Vehicle Code required a police officer to warn a licensee stopped on suspicion of driving under the influence (DUI) that the licensee's refusal to submit to a blood test would subject the licensee to enhanced criminal penalties. Section 9.1 of Act of September 30, 2003, P.L. 120.[3] Officers followed that requirement by reading from DOT Form DL-26, a portion of which tracked that statutory language.

---

(1) If any person placed under arrest for a violation of section 3802 [relating to driving under influence of alcohol or controlled substance] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

    (i)   Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa. C.S. § 1547(b)(1)(i).

[3] When the General Assembly amended Section 1547(b)(2), effective on February 1, 2004, it provided as follows:

It shall be the duty of the police officer to inform the person that: (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and (ii) upon conviction, plea or adjudication of delinquency for violating Section

On June 23, 2016, the United States Supreme Court issued its decision in *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016). In *Birchfield*, petitioners challenged North Dakota and Minnesota laws that made it a crime for a motorist suspected of DUI to refuse a breath or blood test required under those states' implied consent laws. *Id.* at 2170-72. The petitioners argued that the criminal law ordinarily may not compel a motorist to submit to the taking of a blood sample or to a breath test unless a magistrate issues a warrant authorizing such testing. *Id.* at 2172. The Supreme Court held that a breath test, but not a blood test, is reasonable in the absence of a warrant under the search-incident-to-arrest exception to the warrant requirement because there is a great need for testing a motorist's level of intoxication, and the impact on privacy interests is only slight. *Id.* at 2184. Blood tests, in contrast, are "significantly more intrusive" and, thus, require a warrant or exigent circumstances. *Id.* The Court then rejected the respondents' alternative argument that blood tests were "justified based on the driver's legally implied consent to submit to them." *Id.* at 2185. In doing so, the Court stated that its "prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply," that the petitioners did not question the constitutionality of implied consent

---

3802(a) [of the Vehicle Code], the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

*Former* 75 Pa. C.S. § 1547(b)(2). Section 1547(b)(2)(ii) now reads,

It shall be the duty of the police officer to inform the person that: . . . (ii) if the person refuses to submit to chemical **breath** testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa. C.S. § 1547(b)(2)(ii) (emphasis added).

3

laws, and nothing said in its opinion "should be read to cast doubt on them." *Id.* Nevertheless, the Court held, a state could not impose **criminal** penalties on a motorist for refusing to submit to a blood test because there had to "be a limit on the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." *Id.* In short, "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 2186.

According to DOT, a week after *Birchfield* was decided, the Pennsylvania District Attorneys Association and a number of county district attorneys participated in a teleconference with DOT. (DOT's Br. at 12-13.) During that teleconference, the district attorneys expressed concern that if the warning about enhanced criminal penalties was not removed from Form DL-26, drivers arrested for DUI who consented to a blood test would be able to successfully move to suppress the results in the criminal proceedings. (*Id.* at 13.) DOT agreed to amend Form DL-26 by creating one for breath tests and one for blood tests, the latter of which is now Form DL-26B. (*Id.*)

The district attorneys' concern was subsequently validated by the Superior Court's decision that when a motorist is given the warning contained in Section 1547(b)(2)(ii), the warning is "partially inaccurate" and, consequently, the results of the blood test must be suppressed and an enhanced sentence for refusing the blood test must be vacated. *Commonwealth v. Evans*, 153 A.3d 323, 331 (Pa. Super. 2016) (vacating the trial court's suppression order finding that the driver consented to a draw of his blood where the officer warned the driver that he would be subject to enhanced criminal penalties if he refused); *see also Commonwealth v. Giron*, 155 A.3d 635, 640 (Pa. Super. 2017) (vacating sentence and holding that a defendant is

4

not subject to enhanced criminal penalties when he refuses an officer's request under the Implied Consent Law to take his blood).

In July 2017, the General Assembly amended Sections 1547(b)(2)(ii) and 3804(c) of the Vehicle Code, consistent with the holding in *Birchfield*, to clarify that enhanced criminal penalties could be imposed only for refusing to submit to "chemical **breath** testing," not blood testing. Section 4 of Act of July 20, 2017, P.L. 333 (emphasis added). A licensee, thus, is no longer subject to enhanced criminal penalties for refusing an officer's request to test his blood absent a search warrant.[4] Concomitantly, since a licensee is no longer subject to enhanced criminal penalties for refusing a blood test, the General Assembly removed from Section 1547(b)(2)(ii) the obligation of an officer to warn a licensee about that consequence. With that background, the question Licensee presents for our consideration is what effect, if any, does an officer's failure to warn a licensee, as ostensibly required by Section 1547(b)(2)(ii) at the time a sample of his blood was requested, have on the suspension of his license.

II. **Factual Background**

Following *Birchfield*, but before the decisions in the Superior Court cases applying *Birchfield* to criminal matters and the General Assembly's amendments to Sections 1547(b)(2)(ii) and 3804(c) of the Vehicle Code, the following undisputed

---

[4] Section 3804(c) now provides that a licensee's punishment may be enhanced for refusing testing of his blood "pursuant to a valid search warrant." 75 Pa. C.S. § 3804(c). Like Section 1547(b)(2)(ii), Section 3804(c) was amended by the Act of July 20, 2017, so as to eliminate enhanced criminal penalties for refusing a test of one's blood in the absence of a valid search warrant. Section 4 of the Act of July 20, 2017, P.L. 333. A licensee need not be warned that refusing a request for blood pursuant to a valid search warrant will subject him to enhanced criminal penalties.

events occurred. On July 17, 2016, Trooper Timothy McConnell (Trooper) of the Pennsylvania State Police responded to a single-car accident scene where there was a Buick Rendezvous lying on its roof in a ditch. No operator was present. Once Trooper identified Licensee's mother as the registered owner, he proceeded to her residence where he spoke with her and Licensee. While Trooper spoke with Licensee, Licensee exhibited classic signs of intoxication. There were also physical markings on Licensee, such as dirt on his hands and a seat belt rash on the left side of his neck, which suggested he had been driving the vehicle when it had crashed. Trooper asked Licensee's father to transport Licensee back to the accident scene down the road so that Trooper could administer field sobriety tests. After Trooper administered one test to Licensee, Licensee put his head down and told Trooper to arrest him. Trooper attempted to administer a preliminary breath test, but Licensee refused. Trooper placed Licensee under arrest on suspicion of DUI and transported him back to the State Police barracks. There, Trooper read verbatim the warnings contained in DOT Form DL-26B. Those warnings provide, in relevant part,

1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.

2. I am requesting that you submit to a chemical test of blood.

3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

6

(Reproduced Record (R.R.) at 37a.)  Trooper did not inform Licensee that he would be subject to enhanced **criminal** penalties under Section 3804(c) of the Vehicle Code if he refused to consent, even though that warning was, at the time, apparently required by Section 1547(b)(2)(ii) of the Vehicle Code.[5]   (R.R. at 25a, 29a.) Licensee refused to submit to a blood test.

Thereafter, DOT suspended Licensee's operating privilege for one year. Licensee appealed to common pleas, arguing that DOT could not suspend his operating privilege because Trooper did not warn him that he would be subject to enhanced criminal penalties as required by Section 1547(b)(2)(ii).  Licensee noted that DOT removed this warning, which had been previously part of DOT Form DL-26, following the United States Supreme Court's decision in *Birchfield* because of concerns that the warning would adversely impact criminal prosecutions.  However, Licensee argued, until the General Assembly amends Section 1547(b)(2)(ii) to reflect *Birchfield*, police officers must give the statutorily mandated warning.

Common pleas denied Licensee's appeal and reinstated his one-year suspension, concluding that DOT met its burden of proof and, Licensee, in opposition, failed to prove that he was incapable of making a knowing and conscious refusal.   (Common Pleas Order, Jan. 4, 2017.)   In its opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa. R.A.P 1925(a), common pleas concluded that in light of *Birchfield* and subsequent Pennsylvania law applying

---

[5] At that time former Section 1547(b)(2)(ii) provided as follows:

> It shall be the duty of the police officer to inform the person that: . . . (ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1) [of the Vehicle Code], the person will be subject to the penalties provided in section 3804(c) [of the Vehicle Code] (relating to penalties).

*Former* 75 Pa. C.S. § 1547(b)(2)(ii).

7

*Birchfield*, Form DL-26B is accurate. (Common Pleas Op. at 9, Mar. 6, 2017.) Common pleas recounted that following *Birchfield*, the Superior Court has held that, "in the absence of a warrant or exigent circumstances," a licensee could not be subject to enhanced criminal penalties for refusing a blood test. (*Id.* at 8 (quoting *Giron*, 155 A.3d at 640).) Therefore, common pleas concluded, a police officer cannot warn a licensee about the potential of an enhanced criminal penalty for refusing a blood test because to do so would be "unduly coercive and deceivingly inaccurate." (*Id.* at 9.) Trooper here, common pleas held, performed his duty by limiting his warning to Licensee that Licensee's refusal to submit to a blood test would result in a suspension of Licensee's operating privilege, and that was what DOT imposed when Licensee refused. (*Id.* at 9-10.)

### III. Analysis

On appeal,[6] Licensee argues that, at the time it was read to him, Form DL-26B did not conform with the mandate contained in Section 1547(b)(2)(ii) in that he was not informed that his refusal would subject him to enhanced criminal penalties and, therefore, his operating privilege should not have been suspended. Licensee further argues that *Birchfield* has no bearing on civil license suspension proceedings, and Pennsylvania law has distinguished between civil license suspension proceedings and criminal proceedings, indicating that the latter does not affect the former.

---

[6] Our standard of review is limited to determining whether common pleas committed an error of law, whether common pleas abused its discretion, or whether the findings of fact are supported by substantial evidence. *Reinhart v. Dep't of Transp., Bureau of Driver Licensing*, 954 A.2d 761, 765 n.3 (Pa. Cmwlth. 2008).

8

In order to support a suspension of Licensee's operating privilege under Section 1547(b)(1), DOT had the burden of proving the following:

> (1) Licensee was arrested for violating Section 3802 of the Vehicle Code by a police officer who had "reasonable grounds to believe" that Licensee was operating or was in actual physical control of the movement of a vehicle while in violation of Section 3802 (i.e., while driving under the influence); (2) Licensee was asked to submit to a chemical test; (3) Licensee refused to do so; and (4) Licensee was **specifically warned** that a refusal would result in the suspension of his operating privileges and **would result in enhanced penalties** if he was later convicted of violating Section 3802(a)(1).

*Martinovic v. Dep't of Transp., Bureau of Driver Licensing*, 881 A.2d 30, 34 (Pa. Cmwlth. 2005) (emphasis added). There is no constitutional requirement for a police officer to provide any warning to a licensee of the consequences of his failure to submit to a blood test, *Negovan v. Department of Transportation, Bureau of Driver Licensing*, __ A.3d __, __ (Pa. Cmwlth., No. 200 C.D. 2017, filed Oct. 24, 2017), slip op. at 5; however, there is a statutory requirement, 75 Pa. C.S. § 1547(b)(2)(ii). It is undisputed that at the time Trooper requested that Licensee submit to a blood test, Section 1547(b)(2)(ii) provided that "[i]t **shall** be the duty of the police officer to inform the person that: . . . (ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties)." *Former* 75 Pa. C.S. § 1547(b)(2)(ii) (emphasis added). Our Supreme Court has said that the language then in Section 1547(b)(2)(ii) "**command[ed]**" a police officer to warn a licensee about the possibility of enhanced criminal penalties if convicted of DUI. *Dep't of Transp., Bureau of Driver Licensing v. Weaver*, 912 A.2d 259, 264 (Pa. 2006) (emphasis added).

9

It is true, as Licensee argues, that the language contained in Section 1547(b)(2)(ii) was mandatory at the time Trooper requested that Licensee submit to a blood test. However, while Section 1547(b)(2)(ii) then "command[ed]" that a warning about enhanced criminal penalties be given, *Weaver*, 912 A.2d at 264, the purpose behind that provision is to make a licensee aware "of the consequences of a refusal to take the test so that he can make a knowing and conscious choice." *Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 877 (Pa. 1989); *see Commonwealth v. Myers*, 164 A.3d 1162, 1171 n.12 (Pa. 2017) (plurality) ("purpose of [Section 1547(b)(2)] 'is to entitle arrestees to the information necessary to assess the dire consequences they face if they fail to consent to chemical testing, to ensure their choice in that regard is knowing and conscious, as we described in *O'Connell*'" (quoting *Weaver*, 912 A.2d at 267 (Baer, J., dissenting))); *Weaver*, 912 A.2d at 265 (noting that the warning contained in Section 1547(b)(2)(ii) "informs the arrestee that the penalties are concrete, and not inconsequential").

Following *Birchfield*, and as the Superior Court concluded thereafter, a licensee **cannot** be criminally punished for refusing a police officer's request to test his blood pursuant to the Implied Consent Law. Although, at the time Trooper requested that Licensee submit to a blood test, Section 1547(b)(2)(ii) still required a warning that a licensee would be subject to enhanced criminal penalties under Section 3804(c) for refusing a test of his blood, Licensee could not, as a matter of constitutional law, be subject to such penalties. Stated simply, enhanced criminal penalties were not a consequence of Licensee's refusing the requested blood test. Licensee's argument is, in effect, that because the General Assembly did not immediately amend Section 1547(b)(2)(ii), DOT and the police had to continue to apply Section 1547(b)(2)(ii). However, the effect of *Birchfield* and the Superior

10

Court cases that followed was to render the criminal penalties warned of in Section 1547(b)(2)(ii) as applied to blood testing unenforceable and to effectively sever that section from the rest of the Vehicle Code. *See* Section 1925 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1925 ("[t]he provisions of every statute shall be severable" with certain exceptions not applicable here); *Commonwealth v. Batts*, 163 A.3d 410, 441 (Pa. 2017) (emphasis added) (stating that "[i]f a provision of a statute is invalidated **for any reason** . . . a court must sever it from the remaining, valid portion of the statute").

Licensee adds that *Birchfield* has no impact on civil license suspension appeals, as recognized by this Court in *Boseman v. Department of Transportation, Bureau of Driver Licensing*, 157 A.3d 10, 21 (Pa. Cmwlth. 2017), and that Pennsylvania Courts have consistently distinguished between civil license suspension proceedings and criminal DUI proceedings. In *Boseman*, the licensee's license was suspended when she refused to submit to a test of her blood under the Implied Consent Law after being arrested for suspicion of DUI. *Id.* at 12. On appeal to this Court, the licensee claimed, *inter alia*, that under *Birchfield*, in the absence of exigent circumstances, the arresting officer had to obtain a warrant for a test of her blood, and his failure to do so required that her appeal be sustained. *Id.* at 19. We concluded that *Birchfield* was not applicable because "[b]y its own language *Birchfield* does not apply to implied consent laws that merely impose civil penalties." *Id.* at 21 (citing *Birchfield*, 136 S. Ct. at 2185 ("Petitioners do not question the constitutionality of [implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply], and nothing we say here should be read to cast doubt on them.")). Rather, we said, "*Birchfield* addressed the constitutionality of a State statute that made it a **crime** to refuse a

warrantless blood test after being arrested for DUI." *Id.* (emphasis in original). Thus, we concluded, while "*Birchfield* may have some impact in criminal DUI proceedings in Pennsylvania where enhanced penalties based on refusal of a blood test are imposed, such is not the case before us in this civil license suspension appeal under the Implied Consent Law." *Id.*

Licensee's point from his citation to *Boseman* and other, similar cases is not entirely clear.[7] We have held that *Birchfield* does not invalidate a civil license suspension based on the argument that a warrant was required to obtain the requested blood test. *Id.* at 21. However, what Licensee seems to suggest is that, in order for his license suspension to be valid, Trooper had to violate Licensee's Fourth Amendment rights by warning Licensee about the no-longer enforceable enhanced criminal penalties because Section 1547(b)(2)(ii) still required that warning. This constitutional violation, according to Licensee's interpretation of these cases, would have no impact on his license suspension and, therefore, there was no reason for

---

[7] In further support of Licensee's position that violations of a licensee's rights in the criminal context have no impact on civil license suspension proceedings and, thus, there is no reason to consider *Birchfield*, he cites to the following cases: *Dep't of Transp. v. Wysocki*, 535 A.2d 77, 79 (Pa. 1987) (holding that whether police roadblock was unconstitutional had no bearing on the validity of a license suspension because Section 1547 merely required an arrest, not a valid one, and, thus, the exclusionary rule does not apply to a license suspension proceeding); *Sitoski v. Dep't of Transp., Bureau of Driver Licensing*, 11 A.3d 12, 20 (Pa. Cmwlth. 2010) (holding that two-hour window for submitting to a chemical test as set forth in Section 3802(a)(2) of the Vehicle Code relates to a licensee's criminal prosecution for DUI and, thus, has no bearing on whether implied consent warnings were properly given for purposes of suspending licensee's license); *Witmer v. Dep't of Transp., Bureau of Driver Licensing*, 880 A.2d 716, 719 (Pa. Cmwlth. 2005) (rejecting licensee's argument that the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966), had to precede an officer's request to draw blood before the licensee's license could be suspended because "the sanctions imposed by the Implied Consent Law are civil in nature and wholly unrelated to the consequences of a criminal DUI prosecution").

common pleas to consider *Birchfield* in this proceeding.[8] To put it simply, Licensee's argument encourages officers to violate licensees' Fourth Amendment rights thereby jeopardizing their criminal prosecutions in order to comply with Section 1547(b)(2)(ii) even though the criminal penalty in the warning is no longer enforceable and, therefore, no longer a consequence of refusing a blood test. We cannot countenance such an argument.

Given our review of the current state of the law, Licensee's argument that his license must be reinstated because he was not warned that he would be subject to no longer constitutionally permissible enhanced criminal penalties for refusing blood testing is unpersuasive. Trooper specifically and accurately warned Licensee about the consequences of refusing a blood test that remain following *Birchfield*, that is, the suspension of his license.[9] Therefore, common pleas did not err when it denied Licensee's appeal.

## IV.    Conclusion

For the foregoing reasons, we affirm the January 4, 2017 Order of common pleas denying Licensee's appeal of DOT's one-year suspension of his operating privilege.

---

[8] On October 18, 2017, an en banc panel of this Court heard argument in *Renfroe v. Department of Transportation, Bureau of Driving Licensing*, docket number 1907 C.D. 2016, which raised the issue of whether, after *Birchfield*, a warning that the licensee would be subject to enhanced criminal penalties for refusing a blood test warranted reversal of his civil license suspension. A decision from this Court in *Renfroe* is pending.

[9] Once DOT meets its burden, the burden shifts to the licensee to establish that he was incapable of making a knowing and conscious refusal. *Dep't of Transp., Bureau of Motor Vehicles v. Kyong Rok Yi*, 562 A.2d 1008, 1009 (Pa. Cmwlth. 1989). Common pleas concluded that Licensee did not prove that his refusal was not knowing and conscious. Although Licensee does not clearly assert in his brief that his refusal was not knowing and conscious, to the extent his argument could be construed in this fashion, it lacks merit for the reasons already articulated.

13

_____

**RENÉE COHN JUBELIRER,** Judge

Judge Cosgrove concurs in result only.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Robert Garlick,                                    :
                  Appellant         :
                             :
             v.                       :     No. 48 C.D. 2017
                             :
Commonwealth of Pennsylvania,           :
Department of Transportation,                :
Bureau of Driver Licensing                     :

# **O R D E R**

     **NOW**, January 3, 2018, the Order of the Court of Common Pleas of Erie County, dated January 4, 2017, is **AFFIRMED**.


                                  _____

                                  **RENÉE COHN JUBELIRER,** Judge