McEvers, Justice, dissenting.
[¶ 22] I respectfully dissent.
*502 [¶ 23] In December 2016, N.D.C.C. § 39-20-01(3)(a) stated in pertinent part:
The law enforcement officer shall inform the individual charged that North Dakota law requires the individual to take the test to determine whether the individual is under the influence of alcohol or drugs; that refusal to take the test directed by the law enforcement officer is a crime punishable in the same manner as driving under the influence.
(Emphasis added.) Section 39-20-01(3)(b), N.D.C.C., stated "[a] test administered under this section is not admissible in any criminal or administrative proceeding to determine a violation of section 39-08-01 or this chapter if the law enforcement officer fails to inform the individual charged as required under subdivision a."
[¶ 24] Prior to Bohe's arrest, the Supreme Court of the United States held "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." Birchfield v. North Dakota , --- U.S. ----, 136 S.Ct. 2160, 2186, 195 L.Ed.2d 560 (2016). If the test requested is blood, reading the portion of the advisory stating "that refusal to take the test directed by the law enforcement officer is a crime punishable in the same manner as driving under the influence" is inaccurate, and prosecuting for refusal of a blood test after reading such an advisory would be unconstitutional under Birchfield . Id. at 2186 (noting partial inaccuracy of North Dakota's advisory). At the time Bohe was stopped it would have been unlawful to prosecute him for refusal to submit to a warrantless blood test without first obtaining a search warrant. Since his stop, this Court has also held it unlawful to prosecute for refusal of a warrantless urine test. State v. Helm , 2017 ND 207, ¶ 16, 901 N.W.2d 57.
[¶ 25] The question is whether Deputy Lloyd should have read the entire advisory which, as applied to a blood test, would have been inaccurate or whether he should have read the advisory excluding the provision to give an accurate advisory for the type of test he intended to be used. In other words, must he read an inaccurate advisory to comply with N.D.C.C. § 39-20-01(3)(b). The majority relies on State v. O'Connor , where an officer recited a complete implied consent advisory prior to the onsite screening test but only read the defendant a partial implied consent advisory prior to the chemical test, which failed to inform him that refusal to take a chemical test is a crime punishable in the same manner as driving under the influence. 2016 ND 72, ¶¶ 2-3, 877 N.W.2d 312. This Court held the breath test was inadmissible because the officer did not provide a complete implied consent advisory and affirmed the district court's order granting the motion to suppress. Id. at ¶¶ 14-15. O'Connor is distinguishable from this case. O'Connor occurred prior to Birchfield , and there was no lawful reason for the officer to deviate from the required implied consent advisory. Here, the officer deviated from the complete implied consent advisory to avoid giving Bohe an inaccurate advisory; one that may have led to an unconstitutional result under Birchfield when it involved administration of a blood test.
[¶ 26] This Court has stated:
The clear legislative intent in enacting chapter 39-20, N.D.C.C., was for the protection of the public, i.e. , to prevent individuals from driving while under the influence of intoxicants. Williams v. North Dakota State Highway Comm'r , 417 N.W.2d 359, 360 (N.D. 1987) ; Asbridge v. North Dakota State Highway Comm'r , 291 N.W.2d 739, 750 (N.D. 1980). Section 39-20-03.1, N.D.C.C., was enacted, in part, to help ensure that an individual who violated this chapter would not continue to drive. It would be *503 an absurd result if we were to hold that an officer's failure to strictly comply with this portion of the statute had the opposite effect. While it is clear that section 39-20-03.1, N.D.C.C., requires the officer to forward the operator's license, the failure to do so does not destroy the Director's jurisdiction to suspend a violator's driving privileges. A contrary holding would defeat the Legislature's intent to protect the public from potential hazards posed by intoxicated drivers.
Schwind v. N.D. Dep't of Transp. , 462 N.W.2d 147, 150 (N.D. 1990). "When adherence to the letter of the law would cause an absurd result, we give effect to the legislative intent even though contrary to the letter of the law." Samdahl v. N.D. Dep't of Transp. , 518 N.W.2d 714, 717 (N.D. 1994).
[¶ 27] The purpose of providing an implied consent advisory is to inform the driver of the consequences of refusing a chemical test. See Hearing on S.B. 2052 Before the Senate Judiciary Comm. , 64th N.D. Legis. Sess. (Jan. 20, 2015) (testimony of Glenn Jackson, Director, Driver's Licence Division, North Dakota Dep't of Transp.); see also Garlick v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing, 176 A.3d 1030, 1036 (Pa. Commw. Ct. 2018). The Commonwealth of Pennsylvania recently addressed this issue with a similar advisory. In Commonwealth v. Robertson , 186 A.3d 440 (Pa. Super. Ct. 2018), the Superior Court of Pennsylvania explained that following Birchfield, a licensee cannot be criminally punished for refusing a police officer's request for a blood test under Pennsylvania's implied consent law and therefore held the criminal penalties warned of for blood testing were unenforceable and were to be severed from the advisory. Robertson , at 446. While it is acknowledged that Pennsylvania does not have an identical advisory, the theory remains the same. Here, the effect of the Birchfield case should render the criminal penalties for refusing a blood test unenforceable and should effectively sever that portion of the advisory to correctly inform the driver of the consequences of refusing a chemical test.
[¶ 28] In Schoon v. N.D. Dep't of Transp. , a case involving an administrative appeal of a driver's license suspension, the majority stated: "After Birchfield , a reading of the 2015 advisory language (and only that advisory language without further explanation about the effect of Birchfield ) would make it extremely difficult for the State to also establish voluntary consent." 2018 ND 210, ¶ 19, 917 N.W.2d 199. The majority in Schoon likewise conceded that following N.D.C.C. § 39-20-01(3)(a) which, if interpreted as the majority has, requires an officer to warn of a criminal charge under section 3(b), which is proscribed by Birchfield , may put the State in a position where there is no lawful way to obtain a voluntary admissible blood test. Schoon , at ¶ 19. Such is likely the case here, because Deputy Lloyd was not trained to administer the chemical breath test and therefore could only request a blood test.
[¶ 29] The majority's application notes that N.D.C.C. § 39-20-01(2) specifically provides: "[t]he law enforcement officer shall determine which of the tests is to be used." Schoon , 2018 ND 210, ¶ 9, 917 N.W.2d 199. As interpreted by the majority, under N.D.C.C. § 39-20-01(3)(a) and (b), the only choice Deputy Lloyd had was to offer an Intoxilyzer breath test he was not trained to administer. Presumably, the choice provided in N.D.C.C. § 39-20-01(2) is to allow for differences in training or availability of certified testing devices. A law enforcement officer not trained to administer a chemical breath test is caught in *504 a "catch 22" situation: either read the advisory omitting the sanction for blood tests or read the advisory in full and risk not being able to use a blood draw given by consent.
[¶ 30] When construing a statute under the rules of statutory construction it is presumed that when enacting a statute, compliance with the constitution of the state and of the United States is intended. N.D.C.C. § 1-02-38(1). Is it also presumed that a result feasible of execution is intended. N.D.C.C. § 1-02-38(4). I have no doubt the legislature when enacting N.D.C.C. § 39-20-01(3)(a) and (b) intended to comply with that construction and that it would be feasible for law enforcement to give an advisory that accurately portrays the law. It does not follow an officer should read an implied consent advisory he knows is inaccurate and may be unconstitutional as applied. It also does not follow that the legislature would require strict adherence to a statute when it is not feasible for law enforcement to follow it.
[¶ 31] The legislature has provided the following rule of statutory construction:
In the event that any clause, sentence, paragraph, chapter, or other part of any title, is adjudged by any court of competent or final jurisdiction to be invalid, such judgment does not affect, impair, nor invalidate any other clause, sentence, paragraph, chapter, section, or part of such title, but is confined in its operation to the clause, sentence, paragraph, section, or part thereof directly involved in the controversy in which such judgment has been rendered.
N.D.C.C. § 1-02-20.
[¶ 32] Here, I cannot conclude the legislature's intent would require a verbatim reading of the statute, thereby misinforming the driver of the law by warning him of the criminal penalties for refusing a blood test, which would be unconstitutional as applied. A statute must be construed to avoid absurd results. Given the facts of this case, requiring an officer to misinform the driver of criminal penalties that would not apply, or offer a test he is not trained to administer, is an absurd result. I conclude the deputy gave a constitutionally accurate advisory by not reading the portion of the statute advising the consequences of refusal of a blood test.
[¶ 33] I would affirm the district court's criminal judgment.
[¶ 34] Lisa Fair McEvers
Gerald W. VandeWalle, C.J.