# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric William Boyd,     :
      Appellant  :
          :
    v.      : No.  498 C.D. 2022
          : Submitted:  February 24, 2023
Commonwealth of Pennsylvania, :
Department of Transportation,  :
Bureau of Driver Licensing   :


BEFORE: HONORABLE PATRICIA A. McCULLOUGH , Judge
     HONORABLE ANNE E. COVEY, Judge
     HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE       FILED:  June 21, 2023


Eric William Boyd (Licensee) appeals from the order dated April 18, 2022 and entered April 19, 2022 in the Court of Common Pleas of Bucks County (trial court) denying his appeal of the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing's (DOT) 18-month suspension of his operating privilege under Section 1547(b)(1)(ii) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(ii), commonly referred to as the Implied Consent Law,[1] based on

---

[1] The Implied Consent Law, Section 1547(b)(1)(ii) of the Vehicle Code, states in relevant part:

 (1) If any person placed under arrest for a violation of section 3802 [(relating to driving under the influence of alcohol or controlled substance)]is requested to

**(Footnote continued on next page…)**

Licensee's refusal to submit to a chemical blood test. Licensee argues DOT failed to meet its burden of proving he refused the chemical test because he was not provided a meaningful opportunity to consent to the chemical test. Upon review, we affirm.

## BACKGROUND

By notice mailed May 31, 2021, DOT warned Licensee that his driving privilege would be suspended for 18 months, effective July 5, 2021, due to his refusal to submit to chemical blood testing on May 15, 2021. Licensee timely appealed to the trial court, which conducted a de novo hearing on February 14, 2022.

At the hearing, Warwick Township Police Department's Sergeant Aaron Richwine (Sergeant Richwine) testified. Trial Ct. Op. at 4. The parties stipulated that Sergeant Richwine validly stopped Licensee in Warwick Township for driving under the influence (DUI). *Id.* Sergeant Richwine read Licensee the Implied

---

submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

. . . .

(ii) For a period of 18 months if any of the following apply:

. . . .

    (B) The person has, prior to the refusal under this paragraph, been sentenced for:

. . . .

        (II) an offense under former section 3731[.]

75 Pa.C.S. § 1547(b)(1)(ii)(B)(II). Here, as noted by the trial court, in 2003, Licensee was convicted of violating former Section 3731 of the Vehicle Code, also relating to driving under the influence of alcohol or controlled substance, which was repealed and replaced with Section 3802 in 2003, effective February 1, 2004. Trial Ct. Op. at 5.

Consent warnings[2] and Licensee initially agreed to submit to a blood draw. *Id.* Sergeant Richwine transported Licensee to a medical center for the blood draw. Sergeant Richwine testified that while waiting for the nurse to arrive, Licensee began to waver about his consent. Reproduced Record (R.R.) at 14a, 16a. Specifically, Licensee mentioned he was unsure about the blood draw and indicated he may want to speak to his attorney. *Id.* at 14a, 16a. However, he then agreed, again stating that he was consenting to the blood draw. *Id.* at 14a.

When the nurse entered the room, she requested Sergeant Richwine provide her a case number for her chart. Trial Ct. Op. at 4. Sergeant Richwine informed the nurse that he could not yet provide a case number but offered to text her the case

---

[2] The Implied Consent warnings, as outlined in DOT's DL-26 form, provide, in relevant part, as follows:

> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> 2. I am requesting that you submit to a chemical test of blood.
>
> 3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months.
>
> 4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

*Garlick v. Dep't of Transp., Bureau of Driver Licensing*, 176 A.3d 1030, 1034 (Pa. Cmwlth. 2018). While Sergeant Richwine testified that he read the four numbered paragraphs "word-for-word" from the DL-26 form, the DL-26 form Sergeant Richwine read Licensee, despite being admitted by DOT at the hearing, was not provided with the trial court's record.

number upon his receipt. *Id*. The nurse stated that she could not conduct a blood draw if Sergeant Richwine did not provide her a case number because she claimed she would have no way of determining which blood came from which defendant. *Id*. Sergeant Richwine showed the nurse Licensee's license and told her the tubes were labeled with Licensee's name. *Id*. Sergeant Richwine informed the nurse that he had 22 years of experience as a police officer and had never previously provided a case number to obtain a blood draw. *Id*. At the hearing, Sergeant Richwine testified to prior issues with this nurse and indicated that he had complained to the nurse's supervisor about her. *Id*.

After Sergeant Richwine and the nurse's interaction, Licensee became argumentative and reluctant to provide blood. *Id*. Licensee indicated that the issue between the nurse and Sergeant Richwine had to be fixed. *Id*. Licensee stated he would not consent to the blood draw. *Id*. Sergeant Richwine attempted to assure Licensee the tubes were not going to be mixed up, and he had nothing to be concerned about. R.R. at 15a. After this, Sergeant Richwine and Licensee had no further interaction. Trial Ct. Op. at 4.

In addition to Sergeant Richwine's testimony, DOT submitted a packet of materials to the trial court, which included the record of Licensee's conviction for a previous DUI, and the DL-26 form. *Id*. Licensee did not testify at the hearing. *Id*.

The trial court denied Licensee's suspension appeal on April 18, 2022, entered April 19, 2022. In its opinion, the trial court noted it found Sergeant Richwine's testimony credible and indicated Licensee's "prior self-serving statement that he was unnerved or reluctant or unable or even incapable of submitting to the blood test because of the nurse's reluctance to administer the test" was insufficient to meet his burden of proving he was unable to submit to the required testing protocols. Trial

4

Ct. Op. at 3-4. Further, the trial court pointed out that neither the police nor medical personnel imposed any additional conditions upon Licensee that fell outside the scope of the Implied Consent Law. *Id.* The trial court found relevant that nothing in the record indicated there was no alternative way of insuring the proper identification of the vial of blood beyond the police case number. *Id.* at 14. Additionally, the trial court found Licensee demonstrated a general unwillingness to submit to testing that was not based solely on the nurse's reluctance to administer the blood draw. *Id.* Ultimately, the trial court concluded Licensee's conduct constituted a refusal to submit to the chemical test. *Id.* Licensee now appeals to this Court.

### ANALYSIS

On appeal, Licensee asserts the trial court erred in denying his suspension appeal because DOT did not meet its burden of proving he refused the chemical test as he was not provided with a reasonable opportunity to submit to the chemical test. Licensee's Br. at 9. Licensee contends that he "was, indeed, faced with a pre-condition to taking the test. His pre-condition was to acquiesce to the risk that his blood would be in jeopardy of getting mixed up." *Id.* at 11. Licensee argues that because he overheard the nurse telling Sergeant Richwine that his blood could be in jeopardy of getting mixed up if she was not provided a case number for her chart, his refusal to take the test was reasonable. *Id.* at 12. We disagree.

In reviewing the trial court's decision, we are limited to "determining whether the trial court's findings are supported by substantial evidence, whether errors of law have been committed, or whether the trial court's determinations demonstrate a manifest abuse of discretion." *McCloskey v. Dep't of Transp., Bureau of Driver Licensing*, 722 A.2d 1159, 1161 (Pa. Cmwlth. 1999). Whether a licensee's conduct

5

constitutes a refusal under the Implied Consent Law is a question of law that depends on the factual determinations of the trial court. *Broadbelt v. Dep't of Transp., Bureau of Driver Licensing*, 903 A.2d 636, 640 (Pa. Cmwlth. 2006) (citation omitted); *Hudson v. Dep't of Transp., Bureau of Driver Licensing*, 830 A.2d 594, 599 (Pa. Cmwlth. 2003). As fact-finder in license suspension appeals, the trial court determines the credibility and weight assigned to the evidence presented. *Factor v. Dep't of Transp., Bureau of Driver Licensing*, 199 A.3d 492, 497 (Pa. Cmwlth. 2018) (citation omitted). We will not second-guess the trial court's credibility determinations on appeal. *Id*.

To sustain a license suspension, DOT bears the burden of establishing: (1) a police officer arrested a licensee and the officer had reasonable grounds to believe the licensee was operating a vehicle under the influence of alcohol or a controlled substance; (2) the officer asked the licensee to submit to a chemical test; (3) the licensee refused to take the chemical test; and (4) the officer specifically warned the licensee that refusing the test would result in DOT revoking his or her driver's license. *Banner v. Dep't of Transp., Bureau of Driver Licensing*, 737 A.2d 1203, 1206 (Pa. 1999). The only element at issue in this case is whether DOT met its burden of proving that Licensee refused to submit to chemical testing.

When a police officer reads the Implied Consent warnings from a DL-26 form to a licensee, the licensee is sufficiently apprised that if he refuses to submit to the chemical test, his operating privilege will be suspended. *Quigley v. Dep't of Transp., Bureau of Driver Licensing*, 965 A.2d 349, 353 (Pa. Cmwlth. 2009). Once the police officer provides the Implied Consent warnings to the licensee, the officer has done all that is legally required to ensure the licensee is fully advised of the consequences of his failure to submit to chemical testing. *Dep't of Transp., Bureau of Driver*

6

*Licensing v. Scott*, 684 A.2d 539 (Pa. 1996). Beyond reading the warnings, an officer must also "provide a licensee with a meaningful opportunity to comply with the Implied Consent Law." *Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 281 (Pa. Cmwlth. 2018) (citation omitted).

Once DOT satisfies its burden of showing that the licensee was offered a meaningful opportunity to submit to chemical testing and refused, the burden shifts to the licensee to prove that he was physically incapable of taking the chemical test or that his refusal was not knowing or conscious. *Kollar v. Dep't of Transp., Bureau of Driver Licensing*, 7 A.3d 336, 339 (Pa. Cmwlth. 2010). "[A]nything less than an unqualified, unequivocal assent," to submit to chemical testing constitutes a licensee's refusal. *Dep't of Transp., Bureau of Driver Licensing v. Renwick*, 669 A.2d 934, 938 (Pa. Cmwlth. 1996). Notably, the Pennsylvania Supreme Court recognizes that a licensee's subjective beliefs do not provide a sufficient justification for refusing to comply with the Implied Consent Law. *Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274 (Pa. Cmwlth. 2018) (citing *Scott*, 684 A.2d 539).

Licensee argues he was not provided a meaningful opportunity to submit to chemical testing, asserting his situation is akin to the scenario in *Brown v. Department of Transportation, Bureau of Driver Licensing*, 738 A.2d 71 (Pa. Cmwlth. 1999). In *Brown*, the police arrested a licensee, who had her four-year-old child with her, for DUI. *Id.* At the time of her arrest, the officer verbally informed the licensee of the Implied Consent Law's requirements. *Id.* The licensee agreed to take the blood test. *Id.* However, the officer then advised the licensee that her child would be taken back to the police station until she returned from the hospital. *Id.* The licensee refused to go to the hospital without her child. *Id.* The officer took the

licensee and her child to the police station and read the licensee the Implied Consent warnings again. *Id*. Again, the licensee agreed to take the test, but only if her daughter was permitted to accompany her to the hospital. *Id*. The officer recorded that the licensee refused to submit to the chemical test. *Id*. In concluding that DOT failed to meet its burden of proving that the licensee refused to submit to a chemical test when requested to do so, this Court explained:

> The law is clear that a refusal is defined as "anything substantially less than unqualified, unequivocal assent" to chemical testing. *Winebarger v. Department of Transportation, Bureau of Driver Licensing,* 655 A.2d 1093 (Pa.[ ]Cmwlth.[ ]1995). In addition, because [the Implied Consent Law] literally requires only that a motorist submit to chemical testing, and the sanction of license suspension applies only to a refusal of such testing, we have held that a suspension under [the Implied Consent Law] may not be supported by a licensee's refusal to satisfy any condition not explicitly required by [the Implied Consent Law]. *Conrad v. Department of Transportation*, . . . 598 A.2d 336 (Pa.[ ]Cmwlth.[ ]1991). ([The licensee] agreed to submit to blood testing on three occasions but refused to sign any documents before being tested. This Court concluded that making the signing of a consent form a prerequisite to testing was not permissible and the refusal of the licensee to sign the consent form was not a refusal to take the test.)
>
>  . . . [The licensee] agreed two times to submit to blood testing as requested by [the officer]. But, the officer conditioned [the licensee's] test on leaving her four[-]year[-]old child at the police station with strangers while she was taken to the hospital to have blood drawn. This condition is not explicitly required by [the Implied Consent Law]. While the trial court found that the officer made a reasonable attempt to explain why the child could not go along to the hospital . . . we find absolutely no support anywhere in the record for this finding and we cannot understand why the child could not have accompanied her mother to the hospital for testing.
>
> As we stated in *Conrad*, "we are not unmindful that anything substantially less than an unequivocal assent to testing constitutes a refusal. However, we do not believe that this principle extends to a situation where the police . . . fail to give a licensee a meaningful opportunity to satisfy the requirements of [the Implied Consent Law]

8

by impermissibly linking extraneous requirements to the test itself." *Id.* at 343. In this case, after careful consideration, we must conclude that [the licensee] was not given a meaningful opportunity to satisfy the requirements of [the Implied Consent Law]. When faced with having to leave her child alone with strangers, [the licensee], as any good parent would do, chose to stay with her child regardless of the consequences. She did not refuse to take the blood test, in fact she agreed to submit to the test two times. Instead, [the licensee] only refused to leave her child. This requirement was not imposed by the Legislature in the Vehicle Code, but was unnecessarily imposed by the officer. It was not related to the test itself and there was no explanation given for not allowing the child to accompany the mother to the hospital. Therefore, [the licensee's] refusal to leave her four[-]year[-]old child while she submitted to a blood test was not substantially less than the unqualified, unequivocal assent to testing and does not constitute a refusal. **In this specific factual situation** we conclude that [the licensee's] refusal to leave her four[-]year[-]old daughter with strangers was reasonable.

*Brown*, 738 A.2d at 73-74 (emphasis added).

Here, Licensee argues that similar to the scenario in *Brown*, he was not given a meaningful opportunity to submit to the test because he overheard a conversation between the nurse and Sergeant Richwine, in which the nurse mentioned concerns about not having the police case number for her charts. Unlike in *Brown*, neither the nurse nor Sergeant Richwine requested or required Licensee to satisfy any condition not explicitly required by the Implied Consent Law. Sergeant Richwine only requested Licensee to submit to the chemical test. Thus, Licensee's reliance on *Brown* is misplaced.

Sergeant Richwine read Licensee the Implied Consent warnings, and Licensee initially agreed to submit to the chemical test. Sergeant Richwine took Licensee to a medical center for a chemical test. The trial court found that Licensee began to waver before the nurse had any interaction with Sergeant Richwine. Ultimately, Licensee did not complete the chemical test. The conversation Licensee overheard

9

between the nurse and Sergeant Richwine did not create any conditions not required by the Implied Consent Law. Accordingly, Licensee was afforded a reasonable opportunity to satisfy the requirements of the Informed Consent Law before his refusal.

## CONCLUSION

For these reasons, we conclude the trial court did not err when it denied Licensee's suspension appeal. Accordingly, we affirm the trial court's order.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric William Boyd,            :
               Appellant    :
                           :
          v.             : No.  498 C.D. 2022
                           :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing       :

# **O R D E R**

**AND NOW**, this 21st day of June 2023, the Court of Common Pleas of Bucks County's April 18, 2022 order is **AFFIRMED**.

_____
STACY WALLACE, Judge