IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James F. Vierra, Jr.,                           :
                    Appellant                   :
                                                :
        v.                                      :   No. 1717 C.D. 2018
                                                :   Submitted: May 10, 2019
Commonwealth of Pennsylvania,                   :
Department of Transportation,                   :
Bureau of Driver Licensing                      :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                       FILED: September 16, 2019

        James F. Vierra, Jr. (Licensee) appeals an order of the Court of
Common Pleas of Bucks County (trial court) denying his license suspension appeal
and reinstating the Department of Transportation's (PennDOT) 12-month
suspension of his operating privilege under Section 1547 of the Vehicle Code, 75
Pa. C.S. §1547, commonly referred to as the Implied Consent Law.  For the
following reasons, we affirm.

        On July 3, 2016, Licensee was arrested and charged with driving under
the influence of alcohol (DUI) and 22 other criminal offenses including aggravated
assault.  Before trial, the district attorney's office withdrew the DUI charge.
Licensee was found not guilty of all remaining charges.

        On July 19, 2016, PennDOT notified Licensee that his operating
privilege would be suspended for a period of 12 months, effective August 23, 2016.
The notice explained that the suspension resulted from his refusal to submit to
chemical testing following his arrest on July 3, 2016, which was a violation of the

Implied Consent Law. Licensee appealed, contending that the police officer who arrested him for DUI "never gave a roadside test, breathalyzer and or asked me to take a blood test." Certified Record (C.R.), Item No. 1, Petition for Appeal, ¶5.

On November 28, 2018, the trial court held a *de novo* hearing. PennDOT presented the testimony of Falls Township (Township) police officer Tom Lundquist. He testified that on July 3, 2016, at about 11:00 p.m., he and another Township police officer, identified as Corporal Pinto, were dispatched to Licensee's residence at the Mercer Court Apartment complex in response to a female caller (C.S.) requesting an "officer standby" while she retrieved personal items from the residence. Notes of Testimony, 11/28/2018, at 37 (N.T.__); Reproduced Record at 37 (R.R.__). Lundquist testified that while he was talking to C.S. in front of the apartment building,

> [Pinto] had yelled to me to watch out. As I turned I see him jumping out of the way of the black sedan coming at us, you know, yelling, stop, stop, stop. The black vehicle actually accelerated past us, almost struck a vehicle on the left, almost struck another vehicle on the right. As the vehicle drove past, [C.S.] was yelling, that's him, that's him.

N.T. 38, R.R. 38.

Lundquist and Pinto chased Licensee around the complex's horseshoe shaped driveway until Licensee returned to the starting point of the encounter. After stopping the vehicle, Pinto confronted Licensee, and they got into a "pushing match." N.T. 38; R.R. 38. As Licensee was taken into custody, he was yelling to neighbors to record the incident; at this point, Lundquist "detected an odor of alcohol coming from his person, from his breath." N.T. 39; R.R. 39.

Lundquist placed Licensee in the back of his patrol vehicle and spoke to C.S. for more information. She stated that she had travelled from Massachusetts

to see if she and Licensee could repair their relationship.[1]  They went to Philadelphia for the evening, where they consumed alcohol at a bar.  Licensee became angry because other men were looking at C.S. and told her to find her own way home.  He left her at the bar.

Lundquist arrested Licensee for DUI and asked if he agreed to go to the hospital for a blood test.  Licensee refused.  Lundquist acknowledged that he did not read PennDOT's DL-26 form to Licensee because he did not have a copy with him.  However, upon their arrival at the police station, he obtained a DL-26 form and read it verbatim to Licensee and requested his submission to a blood test.  Licensee refused to take the blood test.

Licensee testified about his encounter with Lundquist and Pinto as follows:

> So I pulled in the community.  There were multiple police cars everywhere.  I slowed down.  I looked around.  I didn't know what was going on.  So I passed my house.  I slowly went past my house.  As doing so I heard a bunch of yelling.  And I looked in my rearview mirror and saw the police officers pointing at me, so I assumed that they were yelling at me…. So I went around the horseshoe, came back around into the community again to confront the officers[.]

N.T. 53-54; R.R. 53-54.  Licensee testified that he did not know why he had been arrested; "all [he] was doing was coming home."  N.T. 59; R.R. 59.  He further

---

[1] At the trial court hearing, Licensee raised an objection on hearsay grounds to Lundquist's testimony regarding C.S.'s statements.  The trial court overruled Licensee's objection and stated that the testimony was "not received for the truth of the content of the statement but that the statements were made [to Lundquist]."  N.T. 40; R.R. 40.  Statements made to an arresting officer are admissible to show the officer's state of mind and establish whether he had reasonable grounds to believe that the licensee operated a motor vehicle while intoxicated.  *Menosky v. Commonwealth*, 550 A.2d 1372, 1374 (Pa. Cmwlth. 1988).

3

testified that the officers did not ask him to submit to a blood test but, rather, a DNA test. He acknowledged that he refused the DNA test. Licensee stated that the police asked for the DNA test "a couple [of] hours" after he was placed in the holding cell. N.T. 60; R.R. 60. One police officer told him that "it's really going to look bad for the judge if [he does not] do [the DNA test]." N.T. 61; R.R. 61.

Lundquist explained that his supervisors "would like [them] to collect the DNA sample from everybody [they] arrest." N.T. 47; R.R. 47. He testified that Licensee was asked to submit to a DNA test "[l]ater in the night during processing," *i.e.*, about two hours after the blood test was requested. N.T. 45-46; R.R. 45-46. Lundquist did not recall who requested the DNA test from Licensee.

Licensee presented the testimony of Township manager Peter Gray, who testified that the Township did not have a formal policy on DNA testing. Gray did not know whether the police had an informal policy or "in-house policies and procedures" regarding DNA testing. N.T. 35; R.R. 35.

The trial court rendered its findings of fact at the close of testimony. Crediting Lundquist's version of events, the trial court denied Licensee's appeal. Licensee appealed to this Court. The trial court issued an order pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), directing Licensee to file a statement of errors complained of on appeal. PA. R.A.P. 1925(b). In his 1925(b) statement, Licensee asserted that Lundquist lacked reasonable grounds to suspect that he had operated a vehicle under the influence of alcohol and never asked Licensee to submit to a blood alcohol test. Alternatively, Licensee argued that he did not have a meaningful opportunity to comply with the Implied Consent Law because the requested DNA test constituted a "prohibited extraneous requirement to chemical testing" and caused him confusion. C.R., Item 20, 1925(b) statement,

4

¶2(d). Licensee further argued that PennDOT was judicially estopped from asserting that he had operated a vehicle under the influence of alcohol because the Commonwealth had asserted, in the underlying criminal proceeding, that Licensee's erratic driving demonstrated his specific intent to cause serious bodily injury.

In its opinion filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), PA. R.A.P. 1925(a), the trial court explained that PennDOT satisfied its burden under the Implied Consent Law to prove that Lundquist had reasonable grounds to believe that Licensee had operated a vehicle under the influence of alcohol; Licensee was asked to submit to a chemical test and refused to do so; and he was warned that the refusal would result in a license suspension. The trial court concluded that the doctrine of judicial estoppel was inapposite because PennDOT was not involved in the underlying criminal prosecution. The trial court further stated that Licensee had waived his claim that confusion caused by the request for an extraneous DNA test deprived him of a meaningful opportunity to comply with the Implied Consent Law. In any event, the trial court rejected as not credible Licensee's testimony that the testing requests were conflicting and unclear.

On appeal,[2] Licensee raises three issues for our consideration. He first argues that the trial court erred by finding that Lundquist had reasonable grounds to suspect that Licensee had operated a vehicle under the influence of alcohol. Second, he argues that the doctrine of judicial estoppel prevented PennDOT from establishing reasonable grounds. Finally, Licensee argues that his refusal to submit

---

[2] This Court's review determines whether the trial court's findings are supported by competent evidence, whether errors of law have been committed, or whether the trial court's determinations demonstrate a manifest abuse of discretion. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203, 1205 (Pa. 1999).

to chemical testing was invalid because the DNA test constituted an impermissible extraneous requirement. We address these issues *seriatim*.

First, Licensee argues that the trial court's finding of reasonable grounds is based on "material error." Licensee Brief at 10. Licensee points out that when reciting its findings of fact at the end of the November 28, 2018, hearing, the trial court incorrectly stated that Licensee's vehicle "swerved from side to side *striking* two cars in the area[.]" N.T. 96; R.R. 96 (emphasis added). However, this is not supported by the testimony of Lundquist, who stated that Licensee's vehicle "almost struck" two cars in the area. N.T. 38; R.R. 38. Licensee asserts that the trial court's error is "material" because the record otherwise contains no evidence to support a finding of reasonable grounds that Licensee drove while intoxicated. Licensee Brief at 12. PennDOT counters that there was ample evidence to support the trial court's finding that Lundquist had reasonable grounds, *i.e.,* C.S.'s statement that she and Licensee had been drinking, an odor of alcohol on Licensee's breath, and Licensee's erratic driving behavior.

To sustain a suspension of a licensee's operating privilege under the Implied Consent Law,[3] PennDOT must establish that the licensee:

---

[3] Section 1547(a) of the Vehicle Code states in pertinent part:

> (a)    General rule.--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance *if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of* section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), *3802 (relating to driving under influence of alcohol or controlled substance)* or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock).

75 Pa. C.S. §1547(a) (emphasis added). Section 1547(b) of the Vehicle Code states that "[i]f any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing

6

> (1) was arrested for driving under the influence by a police officer who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal might result in a license suspension.

*Banner*, 737 A.2d at 1206. Reasonable grounds exist "when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the motorist was operating the vehicle while under the influence of intoxicating liquor." *Id.* at 1207. Reasonable grounds to support a license suspension is not the equivalent of the probable cause required for a criminal prosecution. *Id.* This standard is determined by the totality of the circumstances, which may include "whether there was evidence that the licensee had driven the vehicle before the arrival of the police, the licensee's general appearance, and the licensee's behavior." *Marone v. Department of Transportation, Bureau of Driver Licensing*, 990 A.2d 1187, 1190 (Pa. Cmwlth. 2010). Whether reasonable grounds exist is a question of law reviewable by an appellate court on a case-by-case basis. *Id.* An officer's reasonable grounds are not rendered void if it is later discovered that the officer's belief was erroneous. *McCallum v. Commonwealth*, 592 A.2d 820, 822 (Pa. Cmwlth. 1991).

Here, the evidence adduced at trial was sufficient to establish reasonable grounds. Lundquist testified that while he was talking to C.S., Pinto yelled at him to "watch out" and "jump[ed] out of the way of the black sedan coming at [them]." N.T. 38; R.R. 38. Licensee's vehicle "accelerated past [them], almost struck a vehicle on the left, [and] almost struck a vehicle on the right." *Id.* While

---

and refuses to do so," PennDOT shall suspend the operating privilege for 1 year, or 18 months under certain conditions. 75 Pa. C.S. §1547(b).

Pinto confronted Licensee, they got into a "pushing match." *Id*. C.S. told Lundquist that she and Licensee had consumed alcohol that evening, and Lundquist smelled the odor of alcohol on Licensee's breath. The trial court credited Lundquist's testimony. Viewing the facts and circumstances as they appeared at the time, a person in Lundquist's position could reasonably infer that Licensee had operated his vehicle under the influence of alcohol. *Banner*, 737 A.2d at 1207.

Next, we consider Licensee's argument that PennDOT was judicially estopped from pursuing a suspension of Licensee's operating privilege. More specifically, Licensee asserts that in its criminal case the Commonwealth took the position "that [his] driving speed and swerving were indicia of him intending to strike victims to cause serious bodily injury[.]" Licensee Brief at 21. In the subsequent license suspension proceeding the Commonwealth took the contradictory position that "the same driving was indicia of his incapacity to perceive danger and drive safely." *Id*. PennDOT counters that the "Commonwealth" in the underlying criminal proceeding was represented by the district attorney's office, which is not in privity with PennDOT in Licensee's civil appeal of his license suspension. As such, the doctrine of judicial estoppel does not apply.

Under the judicial estoppel doctrine, "a party to an action is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained." *Marazas v. Workers' Compensation Appeal Board (Vitas Healthcare Corporation)*, 97 A.3d 854, 859 (Pa. Cmwlth. 2014) (quoting *Canot v. City of Easton*, 37 A.3d 53, 60 (Pa. Cmwlth. 2012)). The purpose of judicial estoppel is "to uphold the integrity of the courts by preventing parties from abusing the judicial process by changing positions as the

8

moment requires." *Westfield Insurance Company v. Astra Foods Inc.*, 134 A.3d 1045, 1051 (Pa. Super. 2016) (quoting *Bugosh v. Allen Refractories Company*, 932 A.2d 901, 912 (Pa. Super. 2007)). Put another way, the judicial estoppel doctrine ensures the parties do not play "fast and loose" with the facts in order to suit their interests in different actions before different tribunals. *Marazas*, 97 A.3d at 859. For the doctrine to apply, the issues and the parties must be the same in the subsequent action. *Philadelphia Suburban Water Company v. Pennsylvania Public Utility Commission*, 808 A.2d 1044, 1061 (Pa. Cmwlth. 2002).

In the case *sub judice*, the criminal proceeding was initiated by the district attorney's office, while the civil appeal of the license suspension was initiated by Licensee against PennDOT. PennDOT did not participate in the criminal proceeding and, thus, did not take a position with respect to Licensee's erratic driving behavior.

Even assuming PennDOT and the district attorney's office should be considered the same party because both are part of the "Commonwealth," PennDOT did not take an inconsistent position in the instant action. PennDOT had only to prove that the arresting officer, Lundquist, had "reasonable grounds to believe" that Licensee had operated the vehicle under the influence of alcohol. PennDOT did not have to establish that Licensee was, in fact, under the influence of alcohol. *McCallum*, 592 A.2d at 822 (an officer's reasonable grounds will not be rendered void if the officer's belief is later discovered to be erroneous). Nor did it matter whether the officer believed that Licensee's erratic driving was intentional or not. It mattered only whether the officer believed, reasonably, that Licensee's driving was influenced by alcohol.

Even so, for judicial estoppel to apply, the position asserted in the first action must have been "successfully maintained." *Marazas*, 97 A.3d at 859. Here, the Commonwealth's position in the criminal proceeding was not successful because Licensee was found not guilty of all charges. In short, Licensee's invocation of the judicial estoppel doctrine lacks merit.

Finally, Licensee argues that his refusal to submit to chemical testing did not constitute a violation of the Implied Consent Law because the DNA test requested by officers in the holding cell constituted an impermissible extraneous requirement. Licensee testified that he was asked to submit only to a DNA test and warned that his refusal to take the DNA test would have adverse consequences in court. Licensee asserts that because a DNA test is not required under Section 1547 of the Vehicle Code, his refusal to take the DNA test cannot result in a license suspension. Licensee Brief at 21-22.

At issue, however, is Licensee's refusal to take a blood alcohol test. A "refusal" is defined as "anything substantially less than unqualified, unequivocal assent to chemical testing." *Brown v. Department of Transportation, Bureau of Driver Licensing*, 738 A.2d 71, 73 (Pa. Cmwlth. 1999) (quotation omitted). A licensee need not explicitly refuse to submit to testing but may demonstrate through his or her overall conduct a general unwillingness to submit to testing. *McKenna v. Department of Transportation, Bureau of Driver Licensing*, 72 A.3d 294, 299 (Pa. Cmwlth. 2013). A refusal does not constitute a violation of the Implied Consent Law where the licensee was not given a meaningful opportunity to respond to the request to submit to chemical testing. Whether a licensee's conduct constitutes a refusal is a question of law. *Brown*, 738 A.2d at 72.

10

In advancing his argument that his refusal was somehow tainted by the request for a DNA sample, Licensee disregards the trial court's key findings based on Lundquist's credited testimony. Specifically, the trial court found that Lundquist asked Licensee to submit to a blood test in the patrol vehicle and, upon their arrival at the police station, Lundquist read a Form DL-26 verbatim to Licensee and requested that he submit to a blood test. Licensee refused to take the blood test. Although other officers asked Licensee to submit to a DNA test, that occurred "[l]ater in the night during processing." N.T. 45; R.R. 45. Indeed, Licensee acknowledged that the officers asked for a DNA test "a couple [of] hours" after he was placed in the holding cell. N.T. 60; R.R. 60. Given the timing of these events, the trial court rejected Licensee's assertion that the request for a DNA test caused him to be confused about the blood alcohol test and denied him a meaningful opportunity to comply with the Implied Consent Law. It is well settled that "[q]uestions of credibility and conflicts in the evidence are for the trial court to resolve, not our appellate courts." *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 875 (Pa. 1989). Thus, we will not disturb the trial court's findings.

We conclude that substantial evidence supports the trial court's findings that Lundquist had reasonable grounds to suspect that Licensee had driven while under the influence of alcohol, and that Licensee refused to consent to a blood alcohol test in violation of the Implied Consent Law after being offered a meaningful opportunity to comply. Judicial estoppel is inapplicable as PennDOT was not a party in Licensee's criminal proceeding. We thus affirm the trial court's November 28, 2018, order.

_____
MARY HANNAH LEAVITT, President Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James F. Vierra, Jr., : 
        Appellant : 
         : 
        v. :   No. 1717 C.D. 2018
         : 
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
Bureau of Driver Licensing : 

# **O R D E R**

AND NOW, this 16th day of September, 2019, the order of the Court of Common Pleas of Bucks County in the above-captioned matter, dated November 28, 2018, is AFFIRMED.

_____

MARY HANNAH LEAVITT, President Judge